JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Minnesota Lawyers Mutual Inusrance Company

**DEFENDANTS** Thomas J. Ahrens, Esquire, Ahrens Law Firm, P.C., David E. Ricker, Randall Wagner, John Jarboe, Larry L. Hatter, James J. Green, Sr., Keith Hostler, Angela Hicky, Orrel E. Picklesimer, Executer of the Est. of Edsel Picklesimer, Mark Randall and Neil Barr

**(b)** County of Residence of First Listed Plaintiff ___Hennipen County, MN___
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant ___Cumberland County, PA___
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Anthony P. DeMichele, Esquire - O'Brien & Ryan, LLP  610-834-8800
2250 Hickory Rd, Suite 300, Plymouth Meeting PA 19462

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| | | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | **PRISONER PETITIONS** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 510 Motions to Vacate Sentence | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | **Habeas Corpus:** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 530 General | | |
| | ☐ 440 Other Civil Rights | ☐ 535 Death Penalty | **IMMIGRATION** | |
| | | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | |
| | | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | |
| | | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | |

Note — PERSONAL INJURY column:
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 2201

Brief description of cause:
Insurance coverage dispute

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE  8-27-09

SIGNATURE OF ATTORNEY OF RECORD _(signature)_

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

---

| | |
|---|---|
| MINNESOTA LAWYERS MUTUAL INSURANCE COMPANY | : |
| | : |
| Plaintiff | : CIVIL ACTION NO. |
| | : |
| v. | : |
| | : |
| THOMAS J. AHRENS, ESQUIRE, | : |
| AHRENS LAW FIRM, P.C., | : |
| DAVID E. RICKER, | : |
| RANDALL WAGNER, | : |
| JOHN JARBOE, | : |
| LARRY L. HATTER, | : |
| JAMES J. GREEN, SR., | : |
| KEITH HOSTLER, | : |
| ANGELA HICKEY, | : |
| ORREL E. PICKLESIMER, EXECUTOR OF | : |
| THE ESTATE OF EDSEL PICKLESIMER, | : |
| MARK RANDALL, and | : |
| NEIL BARR, | : |
| | : |
| Defendants | : |

## DECLARATORY JUDGMENT ACTION COMPLAINT

Plaintiff, Minnesota Lawyers Mutual Insurance Company ("MLM"), by way of the

within Complaint against defendants, Thomas J. Ahrens, Esquire and Ahrens Law Firm, P.C.,

hereby states and avers as follows:

## NATURE OF THE ACTION

1. MLM brings this Complaint for declaratory relief pursuant to the federal Declaratory

Judgment Act, 28 U.S.C. § 2201-02, requesting a judgment declaring the parties' respective

rights and obligations under the applicable policy of insurance concerning defendants' claim for

defense and indemnity coverage stemming from defendants' involvement in the solicitation and sale of certain investments to disgruntled investors.

2. Pursuant to 28 U.S.C. § 1391(a), venue is proper in this Court in that a substantial portion of the events giving rise to this claim occurred within the Middle District of Pennsylvania.

3. As the amount in controversy exceeds $75,000.00 exclusive of interest and costs, this Court has subject matter jurisdiction over this matter, pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 2201-02.

## THE PARTIES

4. MLM is a corporation incorporated in the state of Minnesota and eligible to underwrite insurance policies in the Commonwealth of Pennsylvania.

5. Defendant, Thomas J. Ahrens, Esquire, is an adult individual and a named insured under a policy of insurance with MLM residing in the Commonwealth of Pennsylvania at 3017½ Dickinson Avenue, Camp Hill, Cumberland County, Pennsylvania 17011, and maintains a place of business at 52 Gettysburg Pike, Mechanicsburg, Cumberland County, Pennsylvania 17055.

6. Defendant, Ahrens Law Firm, P.C., is a Pennsylvania professional corporation with a business address of 52 Gettysburg Pike, Mechanicsburg, Cumberland County, Pennsylvania 17055.

7. Defendant, David E. Ricker, is an adult individual who maintains a place of business at 325 Eastern Drive, Harrisburg, Dauphin County, Pennsylvania.

8. Defendant, Randall Wagner, is an adult individual residing in the Commonwealth of Pennsylvania at 1855 Mansion Lane, Mount Joy, Pennsylvania.

2

9.  Defendant, John Jarboe, is an adult individual residing in the Commonwealth of Pennsylvania at 1855 Mansion Lane, Mount Joy, Pennsylvania.

10.  Defendant, Larry L. Hatter, is an adult individual and resident of the Commonwealth of Pennsylvania who maintains a post office box at P.O. Box 1218, Mechanicsburg, Pennsylvania.

11.  Defendant, James J. Green, Sr., is an adult individual and resident of the Commonwealth of Pennsylvania who maintains an address at 47 Fairview Road, P.O. Box 450, New Cumberland, Pennsylvania.

12.  Defendant, Keith Hostler, is an adult individual residing in the Commonwealth of Pennsylvania at 92 Industrial Road, Glen Rock, Pennsylvania.

13.  Defendant, Angela Hickey, is an adult individual and resident of the Commonwealth of Pennsylvania who maintains a post office box at P.O. Box 112, Scotland, Pennsylvania.

14.  Defendant, Orrel E. Picklesimer, Executor of the Estate of Edsel Picklesimer, Deceased, is the executor of a deceased resident of the Commonwealth of Pennsylvania who maintains an address at 6334 Pemwoods Street, San Antonio, Texas.

15.  Defendant, Mark Randall, is an adult individual residing in the Commonwealth of Pennsylvania at 18 Brookside Court, Lititz, Pennsylvania.

16.  Defendant, Neill Barr, is an adult individual residing in the Commonwealth of Pennsylvania at 405 Lisburn Heights Drive, Lewisberry, Pennsylvania.

## BACKGROUND

17.  On or about January 24, 2009, MLM issued Lawyers' Professional Liability Policy number 7741-07 (hereinafter the "Policy") to Thomas J. Ahrens, Esquire and Ahrens Law Firm, P.C. (hereinafter the "Insureds"). A copy of the Policy is attached hereto as Exhibit "A."

18.  The Policy had an effective coverage period from January 24, 2009 to January 24, 2010.

### The David E. Ricker Matter

19.  On or about May 28, 2009, David E. Ricker commenced a civil action against the Insureds, by filing a Complaint in the Court of Common Pleas of Cumberland County Pennsylvania. A copy of Mr. Ricker's Complaint is attached hereto as Exhibit "B."

20.  In his Complaint, Mr. Ricker asserted causes of action against the Insureds stemming from an investment/loan made by Mr. Ricker that was solicited by the Insureds.

21.  In his Complaint, Mr. Ricker contends that he invested/loaned $400,000 to Alfred L. Madeira and Sean Healy, but has not received any return on his investment/loan. See Exhibit "B."

22.  Mr. Ricker maintains that the Insureds breached various fiduciary duties owed to him, resulting in investment losses to him in excess of $400,000. See Exhibit "B."

23.  In his Complaint, Mr. Ricker pled claims against the Insureds sounding in professional liability (Counts I and II), negligent misrepresentation (Count III), and breach of fiduciary duty (Count IV). See Exhibit "B."

24.  Mr. Ricker seeks compensatory damages from the Insureds for the losses alleged in his Complaint. See Exhibit "B."

**The Randall Wagner, John Jarboe,**
**Larry L. Hatter, James J. Green, Sr., Keith Hostler,**
**Angela Hickey, Orrel E. Picklesimer Executor of the Estate of**
**Edsel Picklesimer, Deceased, Mark Randall, and Neil Barr, Matter**

25.    On or about July 9, 2009, Randall Wagner, John Jarboe, Larry L. Hatter, James J.

Green, Sr., Keith Hostler, Angela Hickey, Orrel E. Picklesimer Executor of the Estate of Edsel

Picklesimer, Deceased, Mark Randall, and Neil Barr commenced a civil action against the

Insureds, by filing a Complaint in the Court of Common Pleas of Cumberland County

Pennsylvania.  A copy of the Wagner, et al. Complaint is attached hereto as Exhibit "C."

26.  In their Complaint, Mr. Wagner and the other plaintiffs asserted causes of action

against the Insureds stemming from investments/loans made by them that were solicited by the

Insureds.

27.  In their Complaint, Mr. Wagner and the other plaintiffs contend that they

invested/loaned $8,726,400 to Alfred L. Madeira and Sean Healy, but have not received any

return on their investments/loans.  See Exhibit "C."

28.  Mr. Wagner and the other plaintiffs maintain that the Insureds breached various

fiduciary duties owed to them, resulting in investment losses to them in excess of $8,726,400.

See Exhibit "C."

29.  In their Complaint, Mr. Wagner and the other plaintiffs pled claims against the

Insureds sounding in professional liability (Count I), negligent misrepresentation (Count II), and

breach of fiduciary duty (Count III).  See Exhibit "C."

30.  Mr. Wagner and the other plaintiffs seek compensatory damages from the Insureds

for the losses alleged in their Complaint.  See Exhibit "C."

31.  The coverage section of the Policy provides, *inter alia*, that:

5

Minnesota Lawyers Mutual will pay all sums up to the limit of Minnesota
Lawyers Mutual's liability, which the INSURED may be legally obligated
to pay as DAMAGES due to any CLAIM:

(1) arising out of any act, error or omission of the INSURED or a person
for whose acts the INSURED is legally responsible; and

(2) resulting from the rendering or failing to render PROFESSIONAL
SERVICES while engaged in the private practice of law or from rendering or
failing to render PROFESSIONAL SERVICES as a PART TIME EMPLOYED
ATTORNEY OF A GOVERNMENTAL BODY, SUBDIVISION OR AGENCY.

See Exhibit "A."

32. The Policy defines the term "professional services" as follows:

"PROFESSIONAL SERVICES" means legal or notary services for others,
including, but not limited to, services as administrator, conservator or guardian;
executor or personal representative; trustee, escrow agent, title insurance agent;
mediator, arbitrator or other participant in a dispute resolution process; activity
as a member of a bar association, ethics, peer review, formal accreditation or
licensing, or similar professional board or committee, and activities as an author,
strictly in the publication or presentation of research papers, articles in attorney
trade publications or similar materials only if the fees generated from such work
are not greater than ten thousand dollars ($10,000).

See Exhibit "A."

33. The Policy also expressly states that it does not provide coverage for the following:

(1) any CLAIM for DAMAGES arising out of the dishonest, criminal, malicious
or deliberately fraudulent act, error or omission of the INSURED, subject to the
Innocent Insured Protection provisions.

...

(3) any CLAIM arising out of PROFESSIONAL SERVICES rendered by any INSURED
in connection with any business enterprise:
    (a) owned in whole or in part;
    (b) controlled directly or indirectly; or
    (c) managed
by any INSURED, and where the claimed DAMAGES resulted from conflicts of interest
with the interest of any client or former client or with the interest of any person claiming
an interest in the same or related business enterprise.

6

...

(13) any CLAIM arising out of the solicitation or sale of specific securities or specific investments by any INSURED.

See Exhibit "A."

34. The policy also expressly states that Minnesota Lawyers Mutual may cancel the policy for the following reasons:

(ii) Material misrepresentation or fraud which affects the insurability of the risk;

...

This policy may also be cancelled from inception upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of facts material to the acceptance of the risk or to the hazard assumed by Minnesota Lawyers Mutual.

See Exhibit "A."

## COUNT I

35. MLM incorporates herein by reference the averments contained in paragraphs one (1) through thirty-four (34) of the foregoing Complaint as if fully set forth herein at length.

36. The Policy only covers claims that result from "the rendering or failing to render professional services." See Exhibit "A."

37. The claims in Mr. Ricker's Complaint and the Randall Wagner, et al. Complaint do not involve professional services rendered by the Insureds. See Exhibits "B and C."

38. The alleged damages claimed by Mr. Ricker and Mr. Wagner, et al. were not the result of the rendering of any professional services but rather, were the result of failed loans/investments.

7

39. Mr. Ricker's claims and the claims of Mr. Wagner, et al. against the Insureds relate solely to the Insureds' conduct in soliciting Mr. Ricker and Mr. Wagner, et al. to invest/loan money to Alfred Madeira and/or Sean Healy, and do not relate to any professional services that the Insureds provided or failed to provide.

40. Pursuant to the allegations contained in Mr. Ricker's Complaint and the Randall Wagner, et al. Complaint, it is apparent that Mr. Ricker's claims and the claims of Mr. Wagner, et al. do not result from "the rendering or failing to render professional services." See Exhibits "B and C."

41. Therefore, MLM has no duty to either defend or indemnify the Insureds for the incident and claims asserted in the legal actions captioned <u>David E. Ricker v. Thomas J. Ahrens and Ahrens Law Firm, P.C.</u>, currently pending in the Court of Common Pleas of Cumberland County Pennsylvania at docket number 09-3558 and <u>Randall Wagner, et al. v. Thomas J. Ahrens, Esquire and Ahrens Law Firm, P.C.</u>, currently pending in the Court of Common Pleas of Cumberland County Pennsylvania at docket number 09-4586.

WHEREFORE, MLM respectfully requests that this Honorable Court enter judgment in its favor as follows:

      a.      A declaratory judgment in MLM's favor that Mr. Ricker's claims and the claims of Mr. Wagner, et al. against the Insureds do not result from "the rendering or failing to render professional services," pursuant to Lawyers' Professional Liability Policy number 7741-07;

      b.      A declaratory judgment in MLM's favor that exclusion one (1) of Lawyers' Professional Liability Policy number 7741-07 negates coverage for Mr. Ricker's claims and the claims of Mr. Wagner, et al. against the Insureds;

      c.      A declaratory judgment in MLM's favor that exclusion three (3) of Lawyers' Professional Liability Policy number 7741-07 negates

coverage for Mr. Ricker's claims and the claims of Mr. Wagner, et al. against the Insureds;

d.      A declaratory judgment in MLM's favor that exclusion thirteen (13) of Lawyers' Professional Liability Policy number 7741-07 negates coverage for Mr. Ricker's claims and the claims of Mr. Wagner, et al. against the Insureds;

e.      A declaratory judgment in MLM's favor that MLM may cancel Lawyers' Professional Liability Policy number 7741-07 as a result of the Insureds' conduct, which forms the basis of the incident and claims asserted in the legal actions captioned <u>David E. Ricker v. Thomas J. Ahrens and Ahrens Law Firm, P.C.</u>, currently pending in the Court of Common Pleas of Cumberland County Pennsylvania at docket number 09-3558 and <u>Randall Wagner, et al. v. Thomas J. Ahrens, Esquire and Ahrens Law Firm, P.C.</u>, currently pending in the Court of Common Pleas of Cumberland County Pennsylvania at docket number 09-4586;

f.      A declaratory judgment in MLM's favor that MLM has no duty to either defend or indemnify the Insureds for the incident and claims asserted in the legal actions captioned <u>David E. Ricker v. Thomas J. Ahrens and Ahrens Law Firm, P.C.</u>, currently pending in the Court of Common Pleas of Cumberland County Pennsylvania at docket number 09-3558 and <u>Randall Wagner, et al. v. Thomas J. Ahrens, Esquire and Ahrens Law Firm, P.C.</u>, currently pending in the Court of Common Pleas of Cumberland County Pennsylvania at docket number 09-4586; and,

g.      Such other relief as the Court may determine to be appropriate in this action.

## COUNT II

42.  MLM incorporates herein by reference the averments contained in paragraphs one (1) through forty-one (41) of the foregoing Complaint as if fully set forth herein at length.

43.  The Policy expressly excludes coverage for "any CLAIM for DAMAGES arising out of the dishonest, criminal, malicious or deliberately fraudulent act, error or omission of the INSURED, subject to the Innocent Insured Protection provisions." See Exhibit "A."

44. In Count III of Mr. Ricker's Complaint, Mr. Ricker pled a claim against the Insureds for negligent misrepresentation, alleging that the Insureds knowingly made representations and warranties to Mr. Ricker concerning the investments that the Insureds knew were false. See Exhibit "B."

45. In Count II of the Randall Wagner, et al. Complaint, Mr. Wagner, et al. pled a claim against the Insureds for negligent misrepresentation, alleging that the Insureds made false representations to Mr. Wagner, et al. concerning the investments/loans that the Insureds solicited from them. See Exhibit "C."

46. Pursuant to the allegations contained in Mr. Ricker's Complaint and the Randall Wagner, et al. Complaint, it is apparent that the claims for negligent misrepresentation would be excluded from coverage under the Policy pursuant to exclusion (1) of the Policy. See Exhibits "A, B and C."

47. Therefore, MLM has no duty to either defend or indemnify the Insureds for the incident and claims asserted in the legal actions captioned <u>David E. Ricker v. Thomas J. Ahrens and Ahrens Law Firm, P.C.</u>, currently pending in the Court of Common Pleas of Cumberland County Pennsylvania at docket number 09-3558 and <u>Randall Wagner, et al. v. Thomas J. Ahrens, Esquire and Ahrens Law Firm, P.C.</u>, currently pending in the Court of Common Pleas of Cumberland County Pennsylvania at docket number 09-4586.

WHEREFORE, MLM respectfully requests that this Honorable Court enter judgment in its favor as follows:

    a.    A declaratory judgment in MLM's favor that Mr. Ricker's claims and the claims of Mr. Wagner, et al. against the Insureds do not result from "the rendering or failing to render professional services," pursuant to Lawyers' Professional Liability Policy number 7741-07;

10

b.     A declaratory judgment in MLM's favor that exclusion one (1) of Lawyers' Professional Liability Policy number 7741-07 negates coverage for Mr. Ricker's claims and the claims of Mr. Wagner, et al. against the Insureds;

c.     A declaratory judgment in MLM's favor that exclusion three (3) of Lawyers' Professional Liability Policy number 7741-07 negates coverage for Mr. Ricker's claims and the claims of Mr. Wagner, et al. against the Insureds;

d.     A declaratory judgment in MLM's favor that exclusion thirteen (13) of Lawyers' Professional Liability Policy number 7741-07 negates coverage for Mr. Ricker's claims and the claims of Mr. Wagner, et al. against the Insureds;

e.     A declaratory judgment in MLM's favor that MLM may cancel Lawyers' Professional Liability Policy number 7741-07 as a result of the Insureds' conduct, which forms the basis of the incident and claims asserted in the legal actions captioned <u>David E. Ricker v. Thomas J. Ahrens and Ahrens Law Firm, P.C.</u>, currently pending in the Court of Common Pleas of Cumberland County Pennsylvania at docket number 09-3558 and <u>Randall Wagner, et al. v. Thomas J. Ahrens, Esquire and Ahrens Law Firm, P.C.</u>, currently pending in the Court of Common Pleas of Cumberland County Pennsylvania at docket number 09-4586;

f.     A declaratory judgment in MLM's favor that MLM has no duty to either defend or indemnify the Insureds for the incident and claims asserted in the legal actions captioned <u>David E. Ricker v. Thomas J. Ahrens and Ahrens Law Firm, P.C.</u>, currently pending in the Court of Common Pleas of Cumberland County Pennsylvania at docket number 09-3558 and <u>Randall Wagner, et al. v. Thomas J. Ahrens, Esquire and Ahrens Law Firm, P.C.</u>, currently pending in the Court of Common Pleas of Cumberland County Pennsylvania at docket number 09-4586; and,

g.     Such other relief as the Court may determine to be appropriate in this action.

## COUNT III

48. MLM incorporates herein by reference the averments contained in paragraphs one

(1) through forty-seven (47) of the foregoing Complaint as if fully set forth herein at length.

11

49. The Policy expressly excludes coverage for "any CLAIM arising out of PROFESSIONAL SERVICES rendered by any INSURED in connection with any business enterprise: (a) owned in whole or in part; (b) controlled directly or indirectly; or (c) managed by any INSURED, and where the claimed DAMAGES resulted from conflicts of interest with the interest of any client or former client or with the interest of any person claiming an interest in the same or related business enterprise." See Exhibit "A."

50. In the Randall Wagner, et al. Complaint, Mr. Wagner, et al. allege that "Defendants failed to disclose to Plaintiffs that Defendants expected to receive from Madeira and/or Mr. and Mrs. Healy approximately $8,700,000 – about one dollar for each dollar provided by Plaintiffs to Defendants." See ¶ 39 at Exhibit "C."

51. The Randall Wagner, et al. Complaint also alleged, "Although Rule 1.4 of the Rules of Professional Responsibility requires that a lawyer shall keep all clients reasonably informed about the status of their matters, promptly comply with reasonable requests for information, and explain matters to the extent reasonably necessary to permit clients to make informed decisions regarding the representation, Defendants (i) failed to keep Plaintiffs reasonably informed about the status of the matter; (ii) failed to disclose obvious conflicts of interests whereby Defendants would obtain 'fees' from Madeira and/or Mr. and Mrs. Healy for 'delivering' additional funds; and (iii) failed to explain the 'loans' and 'investments' in such a manner to permit Plaintiffs to be reasonable informed prior to forwarding funds." See ¶ 46b at Exhibit "C."

52.   The allegations against the Insureds state that the Insureds injured the investors due to a conflict of interest between the Insureds and the investors related to an investment enterprise.

53.  Pursuant to the allegations levied against the Insureds, it is apparent that the claims against the Insureds would be excluded from coverage under the Policy pursuant to exclusion (3) of the Policy.  See Exhibits "A, B and C."

54.  Therefore, MLM has no duty to either defend or indemnify the Insureds for the incident and claims asserted in the legal actions captioned David E. Ricker v. Thomas J. Ahrens and Ahrens Law Firm, P.C., currently pending in the Court of Common Pleas of Cumberland County Pennsylvania at docket number 09-3558 and Randall Wagner, et al. v. Thomas J. Ahrens, Esquire and Ahrens Law Firm, P.C., currently pending in the Court of Common Pleas of Cumberland County Pennsylvania at docket number 09-4586.

WHEREFORE, MLM respectfully requests that this Honorable Court enter judgment in its favor as follows:

a.   A declaratory judgment in MLM's favor that Mr. Ricker's claims and the claims of Mr. Wagner, et al. against the Insureds do not result from "the rendering or failing to render professional services," pursuant to Lawyers' Professional Liability Policy number 7741-07;

b.   A declaratory judgment in MLM's favor that exclusion one (1) of Lawyers' Professional Liability Policy number 7741-07 negates coverage for Mr. Ricker's claims and the claims of Mr. Wagner, et al. against the Insureds;

c.   A declaratory judgment in MLM's favor that exclusion three (3) of Lawyers' Professional Liability Policy number 7741-07 negates coverage for Mr. Ricker's claims and the claims of Mr. Wagner, et al. against the Insureds;

d.   A declaratory judgment in MLM's favor that exclusion thirteen

13

(13) of Lawyers' Professional Liability Policy number 7741-07
negates coverage for Mr. Ricker's claims and the claims of Mr. Wagner, et
al. against the Insureds;

e.      A declaratory judgment in MLM's favor that MLM may cancel Lawyers'
Professional Liability Policy number 7741-07 as a result of the Insureds'
conduct, which forms the basis of the incident and claims asserted in the
legal actions captioned <u>David E. Ricker v. Thomas J. Ahrens and Ahrens
Law Firm, P.C.</u>, currently pending in the Court of Common Pleas of
Cumberland County Pennsylvania at docket number 09-3558 and <u>Randall
Wagner, et al. v. Thomas J. Ahrens, Esquire and Ahrens Law Firm, P.C.</u>,
currently pending in the Court of Common Pleas of Cumberland County
Pennsylvania at docket number 09-4586;

f.      A declaratory judgment in MLM's favor that MLM has no duty to either
defend or indemnify the Insureds for the incident and claims asserted in
the legal actions captioned <u>David E. Ricker v. Thomas J. Ahrens and
Ahrens Law Firm, P.C.</u>, currently pending in the Court of Common Pleas
of Cumberland County Pennsylvania at docket number 09-3558 and
<u>Randall Wagner, et al. v. Thomas J. Ahrens, Esquire and Ahrens Law
Firm, P.C.</u>, currently pending in the Court of Common Pleas of
Cumberland County Pennsylvania at docket number 09-4586; and,

g.      Such other relief as the Court may determine to be appropriate
in this action.

## COUNT IV

55.     MLM incorporates herein by reference the averments contained in paragraphs one

(1) through fifty-four (54) of the foregoing Complaint as if fully set forth herein at length.

56.     The Policy expressly excludes coverage for "any CLAIM arising out of the

solicitation or sale of specific securities or specific investments by any INSURED." See Exhibit

"A."

57.     All of the causes of action and every claim asserted against the Insureds by Mr.

Ricker and Mr. Wagner, et al. stem from the Insureds' alleged solicitation and sale of specific

investments to each investor.  See Exhibits "B and C."

14

58. Specifically, Mr. Ricker makes the following allegations concerning the Insureds in paragraphs five (5) through eight (8) of his Complaint:

- During the cell phone call, Ahrens also spoke with Ricker and Mealy about a possible investment opportunity. The deal Ahrens described involved the purchase of gold. Ahrens indicated that the investment guaranteed a 100-percent profit and presented no risk, because the funds Ricker invested would be secured by a note and a mortgage on real property.

- When he returned to Pennsylvania, Ricker contacted Ahrens about the investment opportunity. Ahrens told him that the investment which promised a 100-percent return was fully-subscribed, but that another opportunity existed which would guarantee a 50-percent return. Ahrens again represented that the deal presented no risk. The funds which Ricker invested would be secured by a note and mortgage on real property. When gold hit its "target number" the deal would be "locked" and the funds would be paid to the investors. Ahrens told Ricker, however, that he had to meet with him the next day or the deal might be lost.

- On December 10, 2008, Ricker caused $400,000.00 to be wire transferred from his account at Citigroup into Ahrens Law's account. Ricker then went to Ahrens' office at Ahrens Law on December 10, 2008, and met with Ahrens.

- During their meeting, Ahrens explained to Ricker that Ahrens would transfer Ricker's $400,000.00 into the account of Alfred L. Madeira ("Madeira"), of Chambersburg, Franklin County, Pennsylvania, and that Maderia would then transfer the funds into an account maintained by Sean Healy ("Healy") in Florida. Healy would then make the investment. Ahrens showed Ricker a document which Ahrens represented to be a statement for one of Healy's trading accounts, which indicated that the account had a .balance of in excess of $79,000,000.00. Ahrens also allegedly spoke to Madeira twice by telephone in Ricker's presence.

See Exhibit "B."

59. Specifically, Mr. Wagner, et al. make the following allegations concerning the Insureds in paragraphs twenty-five (25) through twenty-eight (28) of their Complaint:

15

- In the second half of 2008, Defendants, either through Tom Ahrens or his father, Judd Ahrens, a non-attorney employee of Ahrens Law Firm, P.C., contacted Plaintiffs.

- In all cases, Defendants presented Plaintiffs with an attractive moneymaking opportunity whereby Plaintiffs could achieve an extraordinarily high rate of return with no risk.

- Defendants promised rates of return between 20% and 150% within a few months and guaranteed that, at worst, Plaintiffs' principal would be returned in full.

- While Plaintiffs generally were unaware of each other and various representations were made to each Plaintiff, Defendants represented that Alfred Madeira ("Madeira"), an existing client of Defendants, had been investing in commodities futures, had received very favorable returns on his investments and was seeking others to become involved by lending funds.

See Exhibit "C."

60. Pursuant to the allegations contained in Mr. Ricker's Complaint and the Randall Wagner, et al. Complaint, it is apparent that all of the claims against the Insureds would be excluded from coverage under the Policy pursuant to exclusion (13) of the Policy. See Exhibits "A, B and C."

61. Therefore, MLM has no duty to either defend or indemnify the Insureds for the incident and claims asserted in the legal actions captioned David E. Ricker v. Thomas J. Ahrens and Ahrens Law Firm, P.C., currently pending in the Court of Common Pleas of Cumberland County Pennsylvania at docket number 09-3558 and Randall Wagner, et al. v. Thomas J. Ahrens, Esquire and Ahrens Law Firm, P.C., currently pending in the Court of Common Pleas of Cumberland County Pennsylvania at docket number 09-4586.

WHEREFORE, MLM respectfully requests that this Honorable Court enter judgment in its favor as follows:

16

a.   A declaratory judgment in MLM's favor that Mr. Ricker's claims and the claims of Mr. Wagner, et al. against the Insureds do not result from "the rendering or failing to render professional services," pursuant to Lawyers' Professional Liability Policy number 7741-07;

b.   A declaratory judgment in MLM's favor that exclusion one (1) of Lawyers' Professional Liability Policy number 7741-07 negates coverage for Mr. Ricker's claims and the claims of Mr. Wagner, et al. against the Insureds;

c.   A declaratory judgment in MLM's favor that exclusion three (3) of Lawyers' Professional Liability Policy number 7741-07 negates coverage for Mr. Ricker's claims and the claims of Mr. Wagner, et al. against the Insureds;

d.   A declaratory judgment in MLM's favor that exclusion thirteen (13) of Lawyers' Professional Liability Policy number 7741-07 negates coverage for Mr. Ricker's claims and the claims of Mr. Wagner, et al. against the Insureds;

e.   A declaratory judgment in MLM's favor that MLM may cancel Lawyers' Professional Liability Policy number 7741-07 as a result of the Insureds' conduct, which forms the basis of the incident and claims asserted in the legal actions captioned <u>David E. Ricker v. Thomas J. Ahrens and Ahrens Law Firm, P.C.</u>, currently pending in the Court of Common Pleas of Cumberland County Pennsylvania at docket number 09-3558 and <u>Randall Wagner, et al. v. Thomas J. Ahrens, Esquire and Ahrens Law Firm, P.C.</u>, currently pending in the Court of Common Pleas of Cumberland County Pennsylvania at docket number 09-4586;

f.   A declaratory judgment in MLM's favor that MLM has no duty to either defend or indemnify the Insureds for the incident and claims asserted in the legal actions captioned <u>David E. Ricker v. Thomas J. Ahrens and Ahrens Law Firm, P.C.</u>, currently pending in the Court of Common Pleas of Cumberland County Pennsylvania at docket number 09-3558 and <u>Randall Wagner, et al. v. Thomas J. Ahrens, Esquire and Ahrens Law Firm, P.C.</u>, currently pending in the Court of Common Pleas of Cumberland County Pennsylvania at docket number 09-4586; and,

g.   Such other relief as the Court may determine to be appropriate in this action.

17

## COUNT V

62. MLM incorporates herein by reference the averments contained in paragraphs one (1) through sixty-one (61) of the foregoing Complaint as if fully set forth herein at length.

63. The Policy expressly allows MLM to cancel the Policy due to "material misrepresentation or fraud which affects the insurability of the risk" and/or "upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of facts material to the acceptance of the risk or to the hazard assumed by Minnesota Lawyers Mutual." See Exhibit "A."

64. All of the causes of action are based upon the Insureds' false and misleading statements that were made in November and December 2008, as well as the investment transactions that were secured prior to the issuance of the Policy. See Exhibits "B and C."

65. These false and misleading statements were made with regard to the notes and mortgages that were supposedly going to secure the investments, as well as the rate of return on the investments. See Exhibits "B and C."

66. Specifically, Mr. Ricker makes the following allegation in paragraph thirteen (13) of his Complaint:

> • Ahrens told Ricker that the Note and the Ricker Mortgage would secure the repayment of Ricker's $400,000.00. Ahrens knew, or should have known, this statement to be false, however, particularly with regard to the Mortgage, because when Madeira executed the Ricker Mortgage Ahrens knew that the Property was already subject to three other mortgages.

See Exhibit "B."

67. In the Randall Wagner, et al. Complaint, the plaintiffs assert that the Insureds made statements to the plaintiffs in the second half of 2008 that were false and misleading.

18

See Exhibit "C."

68. Pursuant to the Renewal Update Application for the Policy, "the Insureds acknowledged on November 24, 2008 that the "failure to report any known claims or potential claims, or other material information may result in declination of coverage or policy rescission." See Exhibit "A."

69. Further, the Renewal Update Application, upon which MLM relied, asked specific questions of the Insureds, which the Insureds answered.

70. Those questions and answers were,

> Have you or any attorney proposed for this insurance represented any clients with respect to the sale or issuance of debt or equity securities in the past 36 months *which were not previously disclosed on a prior application*?
>
> *Do not include isolated transactions involving only insiders or fewer than 4 persons, where no notice or filing is required with the SEC or state agency, such as may occur in the organization of a corporation or limited partnership.*
>
> Answer: No.
>
> Does the applicant firm or any lawyer have any equity interest or serves/served as an officer, director, or partner in the following types of businesses, the fact of which was not previously disclosed on a prior application?
>
> Banking/Financial Institutions:  No.
> Consultants; Business Consultants or other:  No.
> Investments/Financial Clients:  No.
> Real Estate Development Clients:  No.
> Mortgage, Real Estate or Securities Broker:  No.
> Title Agency:  No.
>
> In the past 5 Years, has any attorney proposed for this insurance engaged in any business other than the practice of law while also practicing law which was not previously disclosed on a prior

19

application? (Do not include "teaching", "property leasing" or "farming").

Answer: No.

See Exhibit "A" (emphasis in original).

71. The Policy, which had an effective date of January 24, 2009, also states:

The application for coverage is a part of this policy.

By acceptance of this policy the INSURED agrees:

(1) the statements in the application are the representations of all INSUREDS;

(2) such representations are material as this policy is issued in reliance upon the truth of such representations; and

(3) this policy embodies all of the agreements between the INSURED, Minnesota Lawyers Mutual and OUR agent.

See Exhibit "A."

72. Pursuant to the allegations contained in Mr. Ricker's Complaint and the Randall Wagner, et al. Complaint, it is apparent that the Insureds withheld material information from MLM before the effective date of the Policy and therefore, MLM should be permitted to cancel the Policy. See Exhibits "A, B and C."

73. Moreover, the allegations levied against the Insureds demonstrate that certain information provided by the Insureds on the Renewal Update Application was false and that MLM relied upon false information when issuing the Policy. As a result, MLM should be permitted to cancel the Policy. See Exhibits "A, B and C."

74. Therefore, MLM has no duty to either defend or indemnify the Insureds for the incident and claims asserted in the legal actions captioned David E. Ricker v. Thomas J. Ahrens and Ahrens Law Firm, P.C., currently pending in the Court of Common Pleas of Cumberland

20

County Pennsylvania at docket number 09-3558 and <u>Randall Wagner, et al. v. Thomas J. Ahrens,</u> <u>Esquire and Ahrens Law Firm, P.C.</u>, currently pending in the Court of Common Pleas of Cumberland County Pennsylvania at docket number 09-4586, and MLM should be permitted to cancel the Policy.

WHEREFORE, MLM respectfully requests that this Honorable Court enter judgment in its favor as follows:

a. A declaratory judgment in MLM's favor that Mr. Ricker's claims and the claims of Mr. Wagner, et al. against the Insureds do not result from "the rendering or failing to render professional services," pursuant to Lawyers' Professional Liability Policy number 7741-07;

b. A declaratory judgment in MLM's favor that exclusion one (1) of Lawyers' Professional Liability Policy number 7741-07 negates coverage for Mr. Ricker's claims and the claims of Mr. Wagner, et al. against the Insureds;

c. A declaratory judgment in MLM's favor that exclusion three (3) of Lawyers' Professional Liability Policy number 7741-07 negates coverage for Mr. Ricker's claims and the claims of Mr. Wagner, et al. against the Insureds;

d. A declaratory judgment in MLM's favor that exclusion thirteen (13) of Lawyers' Professional Liability Policy number 7741-07 negates coverage for Mr. Ricker's claims and the claims of Mr. Wagner, et al. against the Insureds;

e. A declaratory judgment in MLM's favor that MLM may cancel Lawyers' Professional Liability Policy number 7741-07 as a result of the Insureds' conduct, which forms the basis of the incident and claims asserted in the legal actions captioned <u>David E. Ricker v. Thomas J. Ahrens and Ahrens Law Firm, P.C.</u>, currently pending in the Court of Common Pleas of Cumberland County Pennsylvania at docket number 09-3558 and <u>Randall Wagner, et al. v. Thomas J. Ahrens, Esquire and Ahrens Law Firm, P.C.</u>, currently pending in the Court of Common Pleas of Cumberland County Pennsylvania at docket number 09-4586;

f. A declaratory judgment in MLM's favor that MLM has no duty to either defend or indemnify the Insureds for the incident and claims asserted in

21

the legal actions captioned <u>David E. Ricker v. Thomas J. Ahrens and Ahrens Law Firm, P.C.</u>, currently pending in the Court of Common Pleas of Cumberland County Pennsylvania at docket number 09-3558 and <u>Randall Wagner, et al. v. Thomas J. Ahrens, Esquire and Ahrens Law Firm, P.C.</u>, currently pending in the Court of Common Pleas of Cumberland County Pennsylvania at docket number 09-4586; and,

g.     Such other relief as the Court may determine to be appropriate in this action.


Respectfully submitted,

O'BRIEN & RYAN, LLP


ANTHONY P. DEMICHELE
BRETT M. LITTMAN
Attorneys for Plaintiff,
Minnesota Lawyers Mutual Insurance
Company

# EXHIBIT A

# MINNESOTA LAWYERS MUTUAL

INSURANCE COMPANY

| Named Insured | Endorsement Number |
|---|---|
| | |

| Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|
| | | |

The above information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## INDIVIDUAL PRIOR ACTS RETROACTIVE DATE ENDORSEMENT

It is agreed the PRIOR ACTS RETROACTIVE DATE for the following individual INSURED(s) are listed below:

|  INSURED | PRIOR ACTS RETROACTIVE DATE |
|---|---|
| Thomas J. Ahrens | 11/01/97 |
| Aaron C. Jackson | 01/02/07 |

If 'Full Prior Acts' is designated above, it means the date the INSURED first entered the private practice of law.

Words and phrases that appear in **all capital letters** have special meaning. Please refer to the *Definitions* section of the policy.

MLM-19 (7-03) Page 1 of 1

# MINNESOTA LAWYERS MUTUAL

### INSURANCE COMPANY

| Named Insured | Endorsement Number |
|---|---|
|  |  |

| Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|
|  |  |  |

| The above information is to be completed only when this endorsement is issued subsequent to the preparation of the policy. |
|---|

## PENNSYLVANIA CHANGES ENDORSEMENT

This endorsement modifies insurance provided under the following sections of this policy:

**CANCELLATION OR NON-RENEWAL**
  The Cancellation Or Non-Renewal section is deleted in its entirety and replaced with:

  **CANCELLATION OR NONRENEWAL**
  (1) Cancellation
    (a) This policy may be cancelled by the NAMED INSURED by returning it to US. The NAMED INSURED may also cancel this policy by written notice to US stating at what future date cancellation is to be effective.
    (b) WE may cancel this policy by mailing, or by delivery of a written notice of cancellation to the NAMED INSURED at the address last known to US. Notice will state the effective date and specific reason for cancellation. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the POLICY PERIOD. Delivery of such written notice either by the NAMED INSURED or by US shall be equivalent to mailing.
    (c) If the policy has been in effect for less than 60 days, WE will provide written notice at least 30 days prior to the effective date of cancellation.
    (d) If this policy has been in effect for 60 days or more or if it is a renewal of a policy WE have previously issued, WE may cancel for one of the following reasons:
      (i) Non-payment of premium when due, whether payable directly to US or indirectly under a premium finance plan or extension of credit, or failure to pay amounts in excess of the limit of our liability or within the amount of the deductible;
      (ii) Material misrepresentation or fraud which affects the insurability of the risk
      (iii) A condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to the insurability has become known during the POLICY PERIOD;
      (iv) Loss of reinsurance or a substantial decrease in reinsurance has occurred which loss or decrease shall at the time of cancellation be certified by the Pennsylvania Commissioner of Insurance as directly affecting in-force policies;
      (v) Material failure to comply with policy terms, conditions or contractual liabilities; or
      (vi) Other reasons that the Pennsylvania Commissioner of Insurance may approve.

This policy may also be cancelled from inception upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of facts material to the acceptance of the risk or to the hazard assumed by US.

If WE cancel the policy for reasons stated in(1)(d)(i) or (1)(d)(ii) above, WE will provide notice at least 15 days prior to the effective date of cancellation. If WE cancel the policy for any reason stated in (1)(d)(iii) through (1)(d)(vi), WE will provide notice at least 60 days prior to the effective date of cancellation.

    (e)  If WE cancel this policy, the earned premium shall be computed pro rata and the unearned premium will be refunded to the NAMED INSURED prior to the effective date of the cancellation. If the NAMED INSURED cancels this policy WE shall retain the customary short rate proportion of the premium. Premium adjustment may be made either at the time cancellation is effected or not later than 30 days after the effective date of termination , but payment or tender of unearned premium is not a condition of cancellation.

(2)  Nonrenewal
If WE elect to nonrenew this policy, WE will mail, or deliver written notice of nonrenewal to the NAMED INSURED at the address last known to US at least 60 days prior to the expiration date of this policy. Notice will state the effective date of and specific reason for nonrenewal. Delivery of such written notice by US shall be the equivalent of mailing.

(3)  Renewal
If WE elect to renew this policy, and increase the renewal premium, WE will mail or deliver to the NAMED INSURED at the address last known to US written notice of OUR intent to increase premium at least 30 days prior to the effective date of the premium increase.

(4)  Loss Information
    (a)  If WE elect to cancel or nonrenew this policy, the notice of cancellation or nonrenewal shall state that, upon receipt of a request by the NAMED INSURED WE will provide loss information to the NAMED INSURED for at least 3 years or the period of time during which WE provided coverage to the NAMED INSURED, whichever is less.
    (b)  The NAMED INSURED's written request for loss information must be made within 10 days of the receipt of the notice of cancellation or nonrenewal. WE will have 30 days from the date of receipt of the written request to provide the requested information.

**NOTICE OF ANNUAL MEETING**
The Notice of Annual Meeting section is deleted in its entirety and replaced with:

**NOTICE OF ANNUAL MEETING:**
The policyholder named herein is hereby notified that while this policy is in force, he, she or it is by virtue hereof a member of Minnesota Lawyers Mutual Insurance Company and that the annual meeting of said company is held each year on the fourth Tuesday of the month of June at the principal place of business of the corporation unless the Board of Directors upon proper notice determines to hold the annual meeting at a different time or location. The policyholder is the NAMED INSURED.

All other terms and conditions remain the same.

Words and phrases that appear in **all capital letters** have special meaning.
Please refer to the *Definitions* section of the policy.

# MINNESOTA LAWYERS MUTUAL
### INSURANCE COMPANY
®

## LAWYERS PROFESSIONAL LIABILITY INSURANCE
## CLAIMS-MADE POLICY

**COVERAGE**

WE will pay all sums up to the limit of OUR liability, which the INSURED may be legally obligated to pay as DAMAGES due to any CLAIM:

(1) arising out of any act, error or omission of the INSURED or a person for whose acts the INSURED is legally responsible; and

(2) resulting from the rendering or failing to render PROFESSIONAL SERVICES while engaged in the private practice of law or from rendering or failing to render PROFESSIONAL SERVICES as a PART TIME EMPLOYED ATTORNEY OF A GOVERNMENTAL BODY, SUBDIVISION OR AGENCY.

**DEFENSE AND SETTLEMENT**

WE have the exclusive right to investigate, negotiate and defend CLAIMS seeking DAMAGES against the INSURED for which this policy provides coverage. The INSURED may not negotiate or agree to a settlement of any CLAIM without OUR prior consent. There is no coverage under this policy to pay any part of a settlement of a CLAIM made without our consent.

WE will not settle a CLAIM without the written consent of the INSURED. If the INSURED refuses to consent to any settlement recommended by US and elects to contest the CLAIM or continue legal proceedings, then OUR liability for the CLAIM will not exceed the amount for which the CLAIM could have been settled within the applicable limit including CLAIM EXPENSE incurred with OUR consent to the date of such refusal. The INSURED must cooperate with US in the investigation and defense without charge by the INSURED or reimbursement of the INSURED's expenses, subject to the Supplementary Payment provision of this policy.

After WE have paid the limit of liability or resolved all CLAIMS covered by this policy WE will not:

(1) pay any CLAIM, judgment or expense.

(2) undertake or continue the defense or investigation of any CLAIM or suit.

**TERRITORY**

This policy applies to any act, error or omission which occurs anywhere in the world, provided the suit is first brought and resolved within the United States and its territories or Canada.

**CLAIMS-MADE PROVISIONS**

A CLAIM is covered only if made during the POLICY PERIOD or extended reporting period and reported to US:

(1) during the POLICY PERIOD;

(2) within 60 days after the end of the POLICY PERIOD; or

(3) during the extended reporting period.

The act, error or omission giving rise to the CLAIM must have occurred:

(1) during the POLICY PERIOD; or

(2) prior to the POLICY PERIOD and on or after the PRIOR ACTS RETROACTIVE DATE, if the INSURED had no knowledge of facts which could reasonably support a CLAIM at the effective date of this policy.

A CLAIM is deemed made when:

(1) a demand is communicated to the INSURED for DAMAGES or PROFESSIONAL SERVICES;

(2) a lawsuit is served upon the INSURED seeking DAMAGES; or

(3) an act, error or omission by any INSURED occurs which has not resulted in a demand for DAMAGES but which an INSURED knows or reasonably should know, would support such a demand.

We will not provide coverage for any CLAIM arising out of the same, related or continuing PROFESSIONAL SERVICES which resulted in a CLAIM prior to the first policy issued to the INSURED by US.

**SUPPLEMENTARY PAYMENT**

WE will pay, in addition to the applicable limit of liability and not subject to any deductible:

(1) for loss of earnings to each INSURED for each day or part of a day if such INSURED'S attendance at a trial, hearing, or dispute resolution proceeding involving a CLAIM against such INSURED is at OUR request. The maximum WE will pay under this paragraph is $250.00 per day.

(2) for attorney fees and other reasonable costs, expenses or fees resulting from the investigation or defense of a proceeding before a licensing board, peer review or other sanctioning or licensing body incurred as the result of a notice of proceeding both first received by the INSURED and reported to US during the POLICY PERIOD, and arising out of an act, error or omission in the rendering of PROFESSIONAL SERVICES by an INSURED.

Provided the trial, hearing, dispute resolution proceeding or proceeding before a licensing board, peer review or other sanctioning or licensing body is due to rendering or failure to render PROFESSIONAL SERVICES which occurred on or after the PRIOR ACTS RETROACTIVE DATE and was reported to US during the POLICY PERIOD or within 60 days after the end of the POLICY PERIOD. The INSURED must have had no knowledge of any such proceeding at the effective date of this policy.

**The total amount we will pay under these Supplementary Payment Provisions shall not exceed $5,000 per policy period.**

**DEFINITIONS**

"CLAIM(S)" means:
(1) A demand communicated to the INSURED for DAMAGES or PROFESSIONAL SERVICES;
(2) A lawsuit served upon the INSURED seeking DAMAGES; or
(3) An act, error or omission by any INSURED which has not resulted in a demand for DAMAGES but which an INSURED knows or reasonably should know, would support such a demand.

"CLAIM EXPENSE(S)" means fees charged by an attorney(s) retained by US to defend CLAIMS and all expenses incurred by US or with OUR consent in the investigation, negotiation and disposition of CLAIMS. Salary charges or expenses of OUR regular employees are not included. Expenses of, or charges by, the INSURED without OUR prior written consent are not CLAIM EXPENSES.

"DAMAGE(S)" means monetary judgments or monetary settlements. DAMAGES does not include any of the following:
(1) any fine, penalty or sanction imposed by law or otherwise, or the multiplied portion of any damages assessed against any INSURED imposed directly or vicariously, whether or not imposed by statute or common law.;
(2) punitive or exemplary damages assessed against any INSURED, whether or not allowed by statute or common law;
(3) any forfeiture, reduction, discount or return of professional fees earned or claimed by any INSURED;
(4) the portion of any award, judgment or settlement that does not compensate for loss;
(5) any order for restitution or other payment by a court, tribunal, or agency of government made in connection with the criminal conviction of an INSURED; or
(6) the sanction of an INSURED to pay any fine, penalty or sum adjudged as restitution for damage or harm caused by an INSURED or as reimbursement to a court, tribunal or agency for its costs.

"INSURED" means:
(1) the NAMED INSURED ;
(2) any partner or employee of the NAMED INSURED at the time the CLAIM is reported for PROFESSIONAL SERVICES rendered:
    (a) on behalf of the NAMED INSURED; or
    (b) prior to their relationship with the NAMED INSURED, subject to the PRIOR ACTS RETROACTIVE DATE, if any;
(3) any former partner or employee for former acts, errors or omissions in PROFESSIONAL SERVICES on behalf of the NAMED INSURED;
(4) the heirs, assigns and legal representatives of the NAMED INSURED in the event of the INSURED's death, incapacity or bankruptcy to the extent that the INSURED would have been covered; and
(5) any lawyer who is acting as of counsel and:
    (a) is named and described in the application as of counsel; and
    (b) is performing PROFESSIONAL SERVICES on behalf of the NAMED INSURED.

"NAMED INSURED" means the person or entity shown in Item 1 of the Declarations and any PREDECESSOR FIRM.

"PART-TIME EMPLOYED ATTORNEY OF A GOVERNMENTAL BODY, SUBDIVISION OR AGENCY" means an attorney who regularly engages in a private law practice and maintains a separate law office for that purpose in addition to acting as an employee of a governmental body, subdivision or agency.

"POLICY PERIOD" means the period from the effective date of this policy to the expiration date or earlier

termination date of this policy. POLICY PERIOD does not include any extended reporting period.

"PREDECESSOR FIRM" means any law firm to whose liabilities the NAMED INSURED is the majority successor in interest.

"PRIOR ACTS RETROACTIVE DATE" means the date before which no act, error or omission is covered even if a CLAIM resulting therefrom is reported during the POLICY PERIOD or extended reporting period.

"PROFESSIONAL SERVICES" means legal or notary services for others, including, but not limited to, services as administrator, conservator or guardian; executor or personal representative; trustee, escrow agent, title insurance agent; mediator, arbitrator or other participant in a dispute resolution process; activity as a member of a bar association, ethics, peer review, formal accreditation or licensing, or similar professional board or committee, and activities as an author, strictly in the publication or presentation of research papers, articles in attorney trade publications or similar materials only if the fees generated from such work are not greater than ten thousand dollars ($10,000).

"TOTALLY AND PERMANENTLY DISABLED" means that the owner, partner, officer or employed attorney has become so incapacitated as to be wholly prevented from rendering PROFESSIONAL SERVICES provided such disability:
(1) has existed continuously for not less than six (6) months;
(2) is expected to be continuous and permanent; and
(3) is certified by a medical doctor.

TOTALLY AND PERMANENTLY DISABLED does not include any condition which:
(1) is a result of attempted suicide whether or not the INSURED is sane;
(2) is a result of intentionally self-inflicted injuries; or
(3) is a result of the abuse or misuse of addictive or non-addictive chemical compounds or alcohol.

"WE", "US" and "OUR" mean Minnesota Lawyers Mutual Insurance Company.

---

**EXCLUSIONS**

This policy does not afford coverage for the following:

(1) any CLAIM for DAMAGES arising out of the dishonest, criminal, malicious or deliberately fraudulent act, error or omission of the INSURED, subject to the Innocent Insured Protection provisions.
(2) any CLAIM for bodily injury, sickness or death of any person or damage to or loss of use of any tangible property.
(3) any CLAIM arising out of PROFESSIONAL SERVICES rendered by any INSURED in connection with any business enterprise:
    (a) owned in whole or in part;
    (b) controlled directly or indirectly; or
    (c) managed
by any INSURED, and where the claimed DAMAGES resulted from conflicts of interest with the interest of any client or former client or with the interest of any person claiming an interest in the same or related business enterprise
(4) any CLAIM made by an employer against an INSURED who is an employee of such employer, unless the CLAIM is made against an INSURED acting as a PART-TIME EMPLOYED ATTORNEY OF A GOVERNMENTAL BODY, SUBDIVISION OR AGENCY.
(5) any loss sustained by an INSURED as a beneficiary or distributee of any trust or estate.
(6) any CLAIM arising out of an INSURED'S activities as an officer or director of an employee trust, charitable organization, corporation, company or business other than that of the NAMED INSURED.
(7) any CLAIM arising out of an INSURED'S activities as an elected public official or as a salaried employee of a governmental body, subdivision or agency, unless the CLAIM arises out of PROFESSIONAL SERVICES rendered as a PART-TIME EMPLOYED ATTORNEY OF A GOVERNMENTAL BODY, SUBDIVISION OR AGENCY.
(8) any CLAIM arising out of an INSURED's activities as a fiduciary under the Employee Retirement Income Security Act of 1974, its amendments and any regulation or order issued pursuant thereto. This exclusion does not apply if the INSURED is deemed to be a fiduciary solely by reason of legal advice rendered with respect to an employee benefit plan.
(9) any CLAIM based upon or arising out of actual or alleged discrimination by an INSURED including those based on race, creed, age, sex, marital status or sexual preference.
(10) any CLAIM based upon or arising out of actual or alleged sexual harassment by the INSURED.
(11) any CLAIM involving an employment dispute between any INSURED and an employee.

(12) any CLAIM based on or arising out of an obligation to indemnify, if assumed by contract, which exposes the INSURED to liability which they would otherwise not have, but for such contract.

(13) any CLAIM arising out of the solicitation or sale of specific securities or specific investments by any INSURED;

(14) any loss or damage which is occasioned by terrorism, war, invasion, hostilities, act of foreign enemies, civil war, rebellion, insurrection, military or usurped power, or martial law or confiscation by order of any government or public authority.

## INNOCENT INSURED PROTECTION

(1) WE will provide coverage for any INSURED who did not personally participate in or acquiesce to any actual or alleged dishonest, criminal, malicious or deliberately fraudulent act, error or omission of another INSURED; provided that the INSURED who did not participate in or acquiesce to the act, error or omission which gives rise to a CLAIM:

  (a) had no knowledge of or reason to believe that any such act, error or omission was being committed;

  (b) took appropriate action to prevent further wrongdoing immediately after learning of the act, error or omission; and

  (c) immediately notifies US after obtaining personal knowledge of such act, error or omission.

(2) If a CLAIM has been concealed from US by an INSURED who was responsible for such CLAIM and which, but for such concealment, would have been covered, WE will cover any INSURED who did not participate in, acquiesce to or fail to promptly notify US after having personal knowledge of such concealment.

To be covered under this Innocent Insured Protection provision the INSURED must promptly notify US of such acts or concealment and otherwise comply with all policy provisions. WE will have the right to recover against any INSURED responsible for any CLAIM EXPENSE or DAMAGES paid under this paragraph.

## EXTENDED REPORTING PERIOD OPTIONS

**A. Firm Extended Reporting Period Endorsement**

If this policy is cancelled or non-renewed by either the NAMED INSURED or US, the NAMED INSURED may purchase a Firm Extended Reporting Period Endorsement for CLAIMS which are otherwise covered

(1) arising out of an act, error or omission of the INSURED or a person for whose acts the INSURED is legally responsible;

(2) resulting from the rendering or failing to render PROFESSIONAL SERVICES; and

(3) occurring on or after the PRIOR ACTS RETROACTIVE DATE and prior to the end of the POLICY PERIOD of the policy to which the endorsement is attached.

The period of extended reporting coverage will be 12 months following termination of this policy. It will be annually renewable at the option of the NAMED INSURED upon payment of the premium determined by US in accordance with the rules and rates in effect during the POLICY PERIOD of the policy to which the Firm Extended Reporting Period Endorsement attaches.

The Firm Extended Reporting Period Endorsement is available or renewable only if:

(1) the NAMED INSURED has paid all premium and deductible amounts due;

(2) the premium is paid within 60 days of the effective date or renewal date of this endorsement; and

(3) renewal coverage is not accepted by or offered to the NAMED INSURED in Item 1 of the declarations

The option to purchase this endorsement must be exercised in writing directly to US within 60 days after the end of the POLICY PERIOD or the expiring Firm Extended Reporting Period Endorsement. If the required notice is not submitted directly to US within the timeframe described above, the NAMED INSURED will not, at any later date, be able to purchase the Firm Extended Reporting Period Endorsement.

At the inception of the initial Firm Extended Reporting Period Endorsement the aggregate limit of liability will be fully reinstated to the aggregate limit of liability which was available on the policy to which it attaches.

Any Firm Extended Reporting Period Endorsement WE issue does not extend the policy term or change the scope of coverage.

**B. Individual Retirement Extended Reporting Period Endorsement**

Except as provided in C. below, in the event that any owner, partner, officer or employed attorney of the NAMED INSURED retires and ceases the performance of all private practice of law, that owner, partner, officer or employed attorney shall have the option to purchase a one (1), two (2), three (3), seven (7) year or an unlimited Individual Retirement Extended Reporting Period Endorsement for CLAIMS which are otherwise covered under the policy to which this endorsement attaches.

In the event that the owner, partner, officer, or employed attorney resumes the private practice of law, the coverage provided herein shall be void.

The premium for the Individual Retirement Extended Reporting Period Endorsement will be calculated using the rules and rates in effect during the POLICY PERIOD of the policy to which the Individual Retirement Extended Reporting Period Endorsement attaches. The entire premium for the Individual Retirement Extended Reporting Period Endorsement is earned at the commencement of the Individual Retirement Extended Reporting Period. In the event the owner, partner, officer or employed attorney obtains other applicable coverage, returns to the private practice of law, or cancels the Individual Retirement Extended Reporting Period Endorsement prior to its stated termination date, WE will not return any premium.

The owner, partner, officer or employed attorney's option to purchase the Individual Retirement Extended Reporting Period Endorsement must be exercised in writing directly to US no later than 60 days after the retired attorney is no longer continuously insured by US. Such written notice must include payment of the applicable premium for the endorsement. If the required notice is not submitted directly to US within the timeframe described above, the attorney will not, at any later date, be able to purchase an Individual Retirement Extended Reporting Period Endorsement.

Coverage under the Individual Retirement Extended Reporting Period Endorsement applies only if there is no other applicable coverage.

For a CLAIM to be covered under the Individual Retirement Extended Reporting Period Endorsement the INSURED must have no knowledge of facts which could reasonably support a CLAIM at the effective date of the Individual Retirement Extended Reporting Period Endorsement and the CLAIM must:
(1) arise out of an act, error or omission of the INSURED or a person for whose acts the INSURED is legally responsible; and
(2) result from the rendering or failing to render PROFESSIONAL SERVICES.

The act, error or omission giving rise to the CLAIM must have occurred on or after the PRIOR ACTS RETROACTIVE DATE and prior to the date of retirement.

Any Individual Retirement Extended Reporting Period Endorsement WE issue does not extend the policy term, change the scope of coverage or increase the limits of liability of the policy to which the endorsement is attached.

**C. Death or Disability Extended Reporting Period Endorsement**

If during the POLICY PERIOD an owner, partner, officer or employed attorney dies or becomes TOTALLY AND PERMANENTLY DISABLED in any manner other than:
(1) by attempted suicide or intentionally self-inflicted injuries whether or not the INSURED is sane; or
(2) as a result of the abuse or misuse of addictive or non-addictive chemical compounds or alcohol;
he or she will be entitled to an unlimited Individual Retirement Extended Reporting Period Endorsement, as described in B above, at no additional premium.

In the event that any other coverage applies or the disabled attorney resumes the private practice of law, the coverage provided herein shall be void.

If an INSURED dies and the Death or Disability Extended Reporting Period Endorsement is desired, the INSURED'S estate, heirs, executors or administrators must provide US written proof of the Insured's death within 180 days of the end of the POLICY PERIOD.

If an INSURED becomes TOTALLY AND PERMANENTLY DISABLED by a manner other than described in (1) or (2) above, and the Death or Disability Extended Reporting Period Endorsement is desired, the INSURED or the INSURED's legal guardian must provide US written proof of the total and permanent disability. The proof of disability must be received by US within 180 days of the end of the POLICY PERIOD. We retain the right to contest the certification by the INSURED's physician and it is a condition precedent to this coverage that the INSURED agrees to submit to examinations by any physician designated by US.

Any Death or Disability Extended Reporting Period Endorsement WE issue does not extend the policy term, change the scope of coverage or increase the limits of liability of the policy to which the endorsement is attached.

| | |
|---|---|
| **NOTICE OF CLAIMS AND DISCIPLINARY ACTIONS** | In the event of a CLAIM, disciplinary action, disciplinary investigation or notice to appear before a review board, the INSURED must:<br>(1) give immediate written notice to US; and<br>(2) forward every demand, notice, summons or other communication received by the INSURED or his or her representative to:<br>**Mail or Delivery**<br>Minnesota Lawyers Mutual Insurance Company<br>333 South Seventh Street, Suite 2200<br>Minneapolis, MN 55402<br>**Fax**<br>(800) 305-1510<br><br>In all events, you must give US notice during the POLICY PERIOD, within 60 days after the end of the POLICY PERIOD or during the extended reporting period for coverage to apply. |
| **LIMIT OF LIABILITY** | The per claim limit in Item 3 of the declarations is the maximum amount of OUR liability for all DAMAGES and CLAIM EXPENSE arising out of the same or related PROFESSIONAL SERVICES without regard to the number of CLAIMS or claimants.<br><br>All CLAIM EXPENSE shall first be subtracted from the limit of liability. The remainder, if any, is the amount available to pay money DAMAGES.<br><br>The aggregate limit in Item 3 of the declarations is the total amount of OUR liability for DAMAGES and CLAIM EXPENSE from CLAIMS first reported to US during:<br>(1) the POLICY PERIOD;<br>(2) any Individual Retirement Extended Reporting Period Endorsement; or<br>(3) any Death or Disability Extended Reporting Period Endorsement.<br>The inclusion in this policy of more than one INSURED will not increase the limits of OUR liability. |
| **DEDUCTIBLE** | The limit of liability will apply in excess of the deductible.<br><br>The deductible will be subtracted from the total amount of covered DAMAGES resulting from each CLAIM reported to US during the POLICY PERIOD.<br><br>The deductible is payable within 30 days of OUR written demand. |
| **REIMBURSEMENT TO US** | The INSURED will be liable for amounts WE have paid in settlement of CLAIMS or satisfaction of judgments in excess of the limits of OUR liability. The INSURED will also be liable for amounts paid within the deductible. These amounts will be payable within 30 days of written demand.<br><br>The INSURED will not be entitled to reimbursement of any amount paid as a deductible until WE have fully recovered all DAMAGES paid under this policy.<br><br>The INSURED will reimburse US all amounts held or recovered by the INSURED for any DAMAGES covered by this policy. |
| **SUBROGATION** | To the extent of any payment under this policy, WE will be subrogated to all of the INSURED's rights of recovery. The INSURED will do whatever is necessary to secure such rights. The INSURED will do nothing to prejudice these rights. |
| **ACTION AGAINST US** | No action shall lie against US unless:<br>(1) The INSURED has fully complied with all the terms of this policy and<br>(2) The amount of the INSURED's obligation to pay has been finally determined by judgment after trial and all appeals, if any, or by written agreement of the INSURED, the claimant and US.<br><br>No one may join US as a party to an action against the INSURED to determine the INSURED's liability under this policy. WE may not be impleaded by the INSURED. Bankruptcy or insolvency of the INSURED or his or her estate will not relieve US of any of OUR obligations. |
| **OTHER INSURANCE** | This policy is excess over any other insurance or other risk-shifting device including any automatic or optional extended reporting period, whether collectible or not, which provides insurance for such liability or CLAIM, whether the insurance is stated to be primary, pro rata contributory, excess, contingent or otherwise. Risk-shifting device includes, but is not limited to, self-insurance and other risk-sharing agreements.<br><br>This provision does not apply to other insurance written specifically to be excess of this policy. |

| | |
|---|---|
| **CANCELLATION OR NON-RENEWAL** | This policy may be canceled by:<br>(1) The NAMED INSURED by giving US written notice stating when thereafter cancellation is to be effective. Ninety percent of the pro-rata unearned premium will be returned to the INSURED.<br>(2) US with ten days written notice for non-payment of premium. WE will give The NAMED INSURED notice of premium due and the date due at least ten days before the effective cancellation date.<br><br>WE may cancel this policy during the term of the policy with 60 days written notice in accordance with state statutes regulating mid-term cancellation.<br><br>OUR written notice will be made by first class mail addressed to the NAMED INSURED shown in Item 1 of the declarations or by delivery to the NAMED INSURED'S last known address. The effective date of cancellation stated in the notice will become the end of the POLICY PERIOD. Earned premiums will be computed pro-rata. Premium adjustments will be made as soon as practicable. OUR tender of unearned premium is not a precondition of cancellation.<br><br>WE may non-renew for any reason or no reason on 60-days notice prior to the expiration of this policy. Changes in terms available on renewal will not be deemed to be a non-renewal of the policy. |
| **REPRESENTATION IN APPLICATION** | The application for coverage is a part of this policy.<br><br>By acceptance of this policy the INSURED agrees:<br>(1) the statements in the application are the representations of all INSUREDS;<br>(2) such representations are material as this policy is issued in reliance upon the truth of such representations; and<br>(3) this policy embodies all of the agreements between the INSURED, US and/or OUR agent. |
| **CHANGES** | The terms of this policy shall not be waived or changed, except by written endorsement provided by US.<br><br>Any additions to or deletions from the attorneys named in the application must be reported to US in writing within 30 days of the change. In the event of any such changes WE reserve the right to re-evaluate the risk and, at OUR option, take appropriate underwriting actions.<br><br>Any premium adjustments will be made on a pro-rata basis. |
| **ASSIGNMENT** | The INSURED may not assign this policy to any other person or entity. |
| **MUTUAL POLICY CONDITIONS** | The NAMED INSURED is a member of Minnesota Lawyers Mutual Insurance Company and shall participate in the distribution of dividends, to the extent and upon the conditions fixed and determined by the Directors.<br><br>The NAMED INSURED has one vote by virtue of this policy in the election of the Directors of Minnesota Lawyers Mutual Insurance Company.<br><br>Policyholders are not assessable for the debts and obligations of the Company. |
| **NOTICE OF ANNUAL MEETING** | The policyholder named herein is hereby notified that while this policy is in force, he, she or it is by virtue hereof a member of Minnesota Lawyers Mutual Insurance Company and that the annual meeting of said company is held at the same time and place of the annual convention of the Minnesota State Bar Association. The policyholder is the NAMED INSURED. |

*In witness thereof*, WE caused this policy to be executed and attested.

By

John J. Bowden, Secretary

Steven G. Brady, President



## MINNESOTA LAWYERS MUTUAL
### INSURANCE COMPANY

## Pennsylvania Application Addendum

This form is included as part of the application to comply with Pennsylvania Section 4117(k) (1) of Act 165 of 1994.

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any  materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

# MINNESOTA LAWYERS MUTUAL
### INSURANCE COMPANY

**RENEWAL UPDATE APPLICATION FOR LAWYERS PROFESSIONAL LIABILITY INSURANCE - CLAIMS-MADE FORM**

If you have any questions about this form or if we can be of any service to you, please contact Diane Strand your Account Manager at 800-422-1370. ext. 4371

Thank you for your continued support of Minnesota Lawyers Mutual.

**FIRM INFORMATION**

1. Contact Person: **Mr Judd Ahrens**
   Firm Name: **Ahrens Law Firm, PC**
   Primary Office Address: **52 Gettysburg Pike**

   City, State, Zip: **Mechanicsburg, PA 17055**
   Telephone Number: **717-697-1800** Fax Number: **717-697-1866**
   Firm E-Mail: **judd@ahrenslawfirm.com**

   Policy Number **Quote#7741-7**        Renewal Date **1/24/2009**

2a. Current Schedule of Lawyers

| Attorney Name | Attorney Status | | | |
|---|---|---|---|---|
| Ahrens, Thomas | Owner | ✓ | No Change | Change needed* |
| Jackson, Aaron | Associate | ✓ | No Change | Change needed* |

*Please check the applicable box below:

____ the attorney listed above is to be deleted effective ____ (also check box 3.a. below); or

____ the information needs to be updated, please explain and check box 3.a. below. _____

b. _____ An attorney needs to be added to the above list. For each new attorney please complete the following Adding Attorney Form by printing it, having it signed and return it to Minnesota Lawyers Mutual Insurance Company. Also check box 3.a. below.

3. Have there been any changes to the information provided in the firm's most recent application or addendum to the application? (e.g., office systems, procedures, additional/deleted lawyers, etc.)

a. _____ Yes, there have been changes from the application data.

b. ✓ No, the information previously supplied to MLM is still correct.

4. In the last 12 months:

a. have any malpractice CLAIMS been made against any member of the firm?          ___ Yes ✓ No

b. has any firm member become aware of any INCIDENT which could reasonably result in a claim being made against the firm or a member of the firm?          ___ Yes ✓ No

c. has any firm member received an ethics complaint or been disciplined for an ethics violation?          ___ Yes ✓ No

d. If yes to any of the above, have all items been reported to Minnesota Lawyers Mutual?          ___ Yes ___ No

5. Please provide an estimated percentage of the firm's TIME (not income) that will be spent this year in the practice areas listed below. Please round each area of practice to the nearest whole percent. (The total must equal 100%.)

| | Old | New | | Old | New | | Old | New |
|---|---|---|---|---|---|---|---|---|
| Arbitration/Mediation | 0% | % | Estate Planning/Wills/Probate | 85% | 84% | Real Estate | | |
| Bankruptcy | 0% | % | Immigration | 0% | % | Commercial | 0% | % |
| Collections | | | Insurance Defense | 0% | % | Residential (1-4 units) | 2% | 1% |
| Representation of Creditors | 0% | % | Intellectual Property: | | | Securities/Bonds | 0% | % |
| Representation of Debtors | 0% | % | Patent | 0% | % | Other (describe) | 0% | |
| Corporate/General Business (not otherwise specified) | 13% | 15% | IP Litigation | 0% | % | | 0% | % |
| Criminal Defense | 0% | % | Copyright or Trademark | 0% | % | | 0% | % |
| Domestic/Family Law | | | Licensing/Trade Secrets | 0% | % | | 0% | % |
| Collaborative Domestic Law | 0% | % | Plaintiff: | | | | 0% | % |
| Traditional Domestic Law | 0% | % | Personal Injury | 0% | % | | | |
| Entertainment/Sports | 0% | % | FELA | 0% | % | | | |
| Environmental | 0% | % | Employment Law | 0% | % | | | |
| | | | Workers Compensation | 0% | % | | | |
| | | | Social Security Disability | 0% | % | Total (must equal 100%) | | 100% |

Renewal Update MLM 90 (7-06)          1

Minnesota Lawyers Mutual Insurance Company
333 S. 7th St, Suite 2200; Minneapolis, MN 55402
1-800-422-1370 phone     1-800-305-1510 fax

b. In the past 36 months has the applicant firm, or any attorney proposed for this insurance, engaged in any mass tort or class action cases? Do not include cases in which the only involvement was a referral where no fee was or will be retained, and the applicant firm or the attorney performed no work on that matter.     ___ Yes   ✓ No

Do not include cases which were previously disclosed on a prior application.

c. Have you or any attorney proposed for this insurance represented any clients with respect to the sale or issuance of debt or equity securities in the past 36 months _which were not previously disclosed on a prior application_?     ___ Yes   ✓ No

Do not include isolated transactions involving only insiders or fewer than 4 persons, where no notice or filing is required with the SEC or state agency, such as may occur in the organization of a corporation or limited partnership.

6. Does the applicant firm or any lawyer have any equity interest or serves/served as an officer, director, or partner in the following types of businesses, the fact of which was not previously disclosed on a prior application?

___ ✓ .......    ___ ✓ .......
___ ✓ .......    ___ ✓ .......
___ ✓ .......    ___ ✓ .......

If the answers to any of these questions is "yes", please advise what steps the applicant firm has taken to avoid an actual or alleged conflicts of interest claim.

7. In the past 5 Years, has any attorney proposed for this insurance engaged in any business other than the practice of law while also practicing law which was not previously disclosed on a prior application? (Do not include "teaching", "property leasing" or "farming")     ___ Yes   ✓ No

*If Yes, please describe:

8. Does the firm practice in any state other than the state listed on the Declaration page of the policy?     ___ Yes   ✓ No

If yes, please list the state(s)

If there is additional information you would like us to consider, please enter it here:

---

By the act of entering this information and submitting this application, the submitting party is signing this application. The signature below is made by the person indicated, not someone else on their behalf. All rights and responsibilities accorded a physical signature will be considered to hold. The submission of this application does not bind Minnesota Lawyers Mutual (The Company) to issue a policy or the application to purchase the insurance.

By signing this application you agree that we may contact you via telephone, fax, e-mail or other method to discuss your insurance coverage and other products or services offered by Minnesota Lawyers Mutual or any of its affiliates.

I certify that a reasonable inquiry has been made within the firm to assure the accuracy of all information contained herein.

I understand that failure to report any known claims or potential claims, or other material information may result in the declination of coverage or policy rescission.

| Thomas J. Ahrens | President | 11/24/2008 |
|---|---|---|
| Signature of Owner Partner or Authorized Officer | Title | Date |

If you have any questions about your renewal or if we can be of any service to you, please contact Diane Strand, your Account Manager at 800-422-1370. ext. 4371

---

Renewal Update MLM 90 (7-06)                2                Minnesota Lawyers Mutual Insurance Company
333 S. 7th St, Suite 2200; Minneapolis, MN 55402
1-800-422-1370 phone     1-800-305-1510 fax



# MINNESOTA LAWYERS MUTUAL
INSURANCE COMPANY

## Pennsylvania Application Addendum

This form is included as part of the application to comply with Pennsylvania Section 4117(k) (1) of Act 165 of 1994.

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

# EXHIBIT B

John G Milakovic, Esquire
Attorney No. 34843
Charles O. Beckley, II, Esquire
Attorney No. 47564
**BECKLEY & MADDEN**
212 North Third Street
P.O. Box 11998
Harrisburg, PA 17108-1998
(717) 233-7691

DAVID E. RICKER,                          : IN THE COURT OF COMMON PLEAS
          Plaintiff                    : OF CUMBERLAND COUNTY,
                                       : PENNSYLVANIA
       v.                             :
                                       : CIVIL ACTION – LAW
THOMAS J. AHRENS and AHRENS LAW     :
LAW FIRM, P.C.,                            : NO. 09-3558 Civil Term
          Defendants                   :
                                       : JURY TRIAL DEMANDED

## NOTICE

     **YOU HAVE BEEN SUED IN COURT.** If you wish to defend against the claims set
forth in the following pages, you must take action within twenty (20) days after this Complaint
and Notice are served, by entering a written appearance personally or by attorney and filing in
writing with the Court your defenses or objections to the claims set forth against you. You are
warned that if you fail to do so, the case may proceed without you and a judgment may be
entered against you by the Court without further notice for any money claimed in the Complaint
or for any other claim or relief requested by the Plaintiff. You may lose money or property or
other rights important to you.

     **YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.** IF YOU
DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW.
THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

     IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE
TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER
LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

Cumberland County Bar Association
32 South Bedford Street
Carlisle, Pennsylvania 17013
(717) 249-3166

John G Milakovic, Esquire
Attorney No. 34843
Charles O. Beckley, II, Esquire
Attorney No. 47564
**BECKLEY & MADDEN**
212 North Third Street
P.O. Box 11998
Harrisburg, PA  17108-1998
(717) 233-7691

| | |
|---|---|
| DAVID E. RICKER,<br><br>　　　　　Plaintiff<br><br>　　　v.<br><br>THOMAS J. AHRENS and AHRENS LAW<br>LAW FIRM, P.C.,<br>　　　　　Defendants | : IN THE COURT OF COMMON PLEAS<br>: OF CUMBERLAND COUNTY,<br>: PENNSYLVANIA<br>:<br>: CIVIL ACTION – LAW<br>:<br>: NO. *09- 3558  Civil Term*<br>:<br>: JURY TRIAL DEMANDED |

## COMPLAINT

AND NOW comes the Plaintiff, David E. Ricker, who, by and through his attorneys, John G. Milakovic, Esquire, Charles O. Beckley, II, Esquire, and Beckley & Madden, of Counsel, files this Complaint, and in support thereof avers as follows:

## PARTIES

1.  Plaintiff is David E. Ricker ("Ricker"), an adult individual who maintains a place of business at 325 Eastern Drive, Harrisburg, Dauphin County, Pennsylvania.

2.  Defendant Thomas J. Ahrens ("Ahrens") is an adult individual and an attorney licensed to practice law in the Commonwealth of Pennsylvania.  Ahrens resides at 3017½ Dickinson Avenue, Camp Hill, Cumberland County, Pennsylvania 17011, and maintains a place of business at 52 Gettysburg Pike, Mechanicsburg, Cumberland County, Pennsylvania 17055.

1

3. Defendant Ahrens Law Firm, P.C. ("Ahrens Law), is a Pennsylvania professional corporation, which maintains offices at 52 Gettysburg Pike, Mechanicsburg, Cumberland County, Pennsylvania. Upon information and belief, Ahrens is both an officer and an employee of Ahrens Law.

## BACKGROUND FACTS

4. In November, 2008, while Ricker and Jeffrey Mealey, one of Ricker's business partners, were traveling outside of the Commonwealth, they spoke to Ahrens by cell phone. They asked him to do legal work for them in connection with the development of a laser-guided hunting bow with built-in rangefinder. Ahrens agreed, and subsequently an attorney at Ahrens Law prepared a Nondisclosure Agreement for Ricker and Mealy and outside parties, and arranged a meeting for them with patent counsel.

5. During the cell phone call, Ahrens also spoke with Ricker and Mealy about a possible investment opportunity. The deal Ahrens described involved the purchase of gold. Ahrens indicated that the investment guaranteed a 100-percent profit and presented no risk, because the funds Ricker invested would be secured by a note and a mortgage on real property.

6. When he returned to Pennsylvania, Ricker contacted Ahrens about the investment opportunity. Ahrens told him that the investment which promised a 100-percent return was fully-subscribed, but that another opportunity existed which would guarantee a 50-percent return. Ahrens again represented that the deal presented no risk. The funds which Ricker invested would be secured by a note and a mortgage on real property. When gold hit its "target number" the deal would be "locked" and the funds would be paid to the investors. Ahrens told Ricker, however, that he had to meet with him the next day or the deal might be lost.

2

7. On December 10, 2008, Ricker caused $400,000.00 to be wire transferred from his account at Citigroup into Ahrens Law's account. Ricker then went to Ahrens' office at Ahrens Law on December 10, 2008, and met with Ahrens.

8. During their meeting, Ahrens explained to Ricker that Ahrens would transfer Ricker's $400,000.00 into the account of Alfred L. Madeira ("Madeira"), of Chambersburg, Franklin County, Pennsylvania, and that Madeira would then transfer the funds into an account maintained by Sean Healy ("Healy") in Florida. Healy would then make the investment. Ahrens showed Ricker a document which Ahrens represented to be a statement for one of Healy's trading accounts, which indicated that the account had a balance of in excess of $79,000,000.00. Ahrens also allegedly spoke to Madeira twice by telephone in Ricker's presence.

9. At the meeting at Ahrens Law Ahrens executed on Madeira's behalf a Note, dated December 11, 2008, in favor of Ricker. Ahrens claimed to have a power of attorney issued to him by Madeira which authorized him to sign documents on Madeira's behalf. According to the terms of the Note, Madeira agreed to pay to Ricker, on or before March 31, 2009, the principal sum of $400,000.00, plus "total fees and interest of Two Hundred Thousand Dollars ($200,000.00)," or a total amount of $600,000.00. (*Note*, p. 1) A copy of the December 11, 2008 Note is attached hereto as Exhibit A.

10. Ahrens later substituted a new Note, dated December 17, 2008, for the December 11, 2008, Note executed by Ahrens on Madeira's behalf. The new December 17, 2008, Note was allegedly signed by Madeira himself. The December 17, 2008, Note refers to, but does not specifically identify, "Mortgaged Property," and has attached to it a description of real property in Monroe Township, Cumberland County, Pennsylvania. A copy of the December 17, 2008, Note is attached hereto as Exhibit B.

3

11.  Ahrens also provided to Ricker a Mortgage ("the Ricker Mortgage") dated December 17, 2008, executed by Madeira on behalf of Madeira Operations, LLC ("Madeira Operations"), a Pennsylvania limited liability company, in favor of Ricker, on two parcels of real property in Monroe Township, Cumberland County, Pennsylvania ('the Property"). A copy of the Ricker Mortgage is attached hereto as Exhibit C. Ahrens, in his capacity as a notary public, acknowledged Madeira's signature on behalf of Madeira Operations on the Ricker Mortgage. A notation appearing on the upper left hand corner of the Mortgage's first page directs the Recorder to return the Mortgage to Ahrens Law after recording.

12.  Because Ahrens had agreed to represent Ricker and Mealey in connection with the laser-guided bow, and because Ricker on several occasions had spoken with Ahrens concerning estate planning matters, at the December 10, 2008, meeting with Ahrens at Ahrens Law, and at all times thereafter, Ricker believed that Ahrens was representing Ricker's interests in the transaction with Madeira. Ahrens did nothing to dispel this impression. He prepared the Notes and the Ricker Mortgage and provided them to Ricker. He did not advise Ricker to have the Notes and the Ricker Mortgage reviewed by independent counsel, nor did Ahrens ever indicate that he did not represent Ricker in the transaction. Ahrens directed Ricker to transfer the $400,000.00 into Ahrens Law's account, instead of directly to Madeira.

13.  Ahrens told Ricker that the Note and the Ricker Mortgage would secure the repayment of Ricker's $400,000.00. Ahrens knew, or should have known, this statement to be false, however, particularly with regard to the Mortgage, because when Madeira executed the Ricker Mortgage Ahrens knew that the Property was already subject to three other mortgages.

14.  First, on August 15, 2006, Madeira Operations granted an Open-End Mortgage on the Property to The First National Bank of Mercersburg ("the Mercersburg I Mortgage"), in the

4

principal amount of $700,000.00, which was recorded in the Cumberland County Recorder of Deeds' Office on August 16, 2006, in Mortgage Book 1962, Page, 2811, and re-recorded on October 20, 2006, in Mortgage Book 1970, Page 273. Madeira executed the Mercersburg I Mortgage on behalf of Madeira Operations. Ahrens' father, Judd M. Ahrens, a notary public and an officer and employee of Ahrens Law, acknowledged Madeira's signature on the Mercersburg I Mortgage.

15. On May 31, 2007, Madeira Operations issued a second mortgage on the Property to The First National Bank of Mercersburg ("the Mercersburg II Mortgage"), in the principal amount of $450,000.00, which was recorded in the Cumberland County Recorder of Deeds' Office on June 1, 2007, in Mortgage Book 1994, Page 1576. Again, Madeira executed the Mercersburg II Mortgage on behalf of Madeira Operations and, again, Judd Ahrens acknowledged Madeira's signature.

16. Finally, on December 15, 2008 – just two days before executing the Ricker Mortgage – Madeira Operations gave a mortgage on the Property to Angela Hickey ("the Hickey Mortgage"), in the principal sum of $590,000.00. Ahrens himself acknowledged Madeira's signature on the Hickey mortgage. The Hickey mortgage was recorded in the Cumberland County Recorder of Deeds' Office on March 29, 2009, as Instrument Number 200908665.

17. In summary, prior to granting the Ricker Mortgage to Ricker on December 17, 2008, Madeira Operations had already granted three previous mortgages on the Property – the August 15, 2006, Mercersburg I Mortgage ($700,000.00); the May 31, 2007, Mercersburg II Mortgage ($450,000.00; and the December 15, 2008, Hickey Mortgage ($590,000.00) – the principal amounts of which together totaled $1,740,000.00. Upon information and belief, the total amount of these first three mortgages far exceeds the fair market value of the Property.

5

18. Upon information and belief, Ahrens knew of the existence of these three mortgages on the Property when Madeira signed the Ricker Mortgage. Ahrens did not tell Ricker about the mortgages, however, nor did Ahrens advise Ricker to have the Property's title searched before Ricker advanced the $400,000.00 to Ahrens Law, nor did Ahrens afford Ricker time to do so, since Ahrens insisted that the funds had to be transferred to Madeira immediately for the deal to close.

19. Instead, exploiting the heightened credibility that attended his status as an attorney, Ahrens told Ricker that the investment which he advised Ricker to make carried "no risk" – it was a sure thing, a "no brainer."

20. After their meeting on December 11, 2008, Ricker spoke with Ahrens periodically to monitor the progress of the investment. In February, 2009, Ahrens told Ricker that gold had "hit its mark," and that Ahrens expected an early pay-off on the investment. Ricker telephoned Ahrens again in late February, 2009, and Ahrens again indicated that gold had hit its mark and that he planned to meet with Madeira and Healy to discuss payouts on the investment.

21. During their telephone call in late February, 2009, Ahrens solicited Ricker to invest another $250,000.00, to buy more gold. Ricker refused to invest any additional funds, however, until he received the full return of his first investment.

22. On March 12, 2009, Ahrens emailed Ricker and asked Ricker to call him the next day to talk about the Ricker Mortgage. Ricker spoke by telephone with Ahrens on March 13, 2009, and Ahrens advised Ricker to record the Ricker Mortgage. That same day, Ahrens emailed to Ricker a substitute legal description of the Property subject to the Ricker Mortgage, indicating only that the original description was incorrect. Ricker telephoned Ahrens to discuss the reason for the substitute description and Ahrens suggested that Ricker contact Madeira.

23. Ricker telephoned Madeira. Madeira told Ricker that Madeira had negotiated a deal with Healy, pursuant to which all of the investors, including Ricker, would receive back the principal amount of their investment, but nothing more, i.e. no 50-percent profit. Ricker asked Madeira why Madeira believed that Healy would in fact return the investors' money. Madeira responded, "20 years of prison."

24. Taking Ahrens' advice, Ricker recorded the Ricker Mortgage in the Cumberland County Recorder of Deeds' Office on March 13, 2009, as Instrument Number 200907326. When he did so, he learned that the Property was already subject to three other mortgages, which together totaled $1,350,000.00. Ricker's Mortgage increased the total of the liens recorded against the Property to $1,750,000.00. (The three mortgages recorded ahead of Ricker's were the Mercersburg I and II Mortgages and a mortgage which Madeira Operations had granted to Neil Barr the previous day, March 12, 2009 ("the Barr Mortgage"), in the principal amount of $200,000.00, and which was recorded on March 12, 2009, in the Cumberland County Recorder of Deeds' Office as Instrument Number 200907326. Like the Ricker Mortgage, the Barr Mortgage contains a notation on the upper left hand corner of the first page directing the Recorder to return it to Ahrens Law. Although the Hickey Mortgage predated the Ricker Mortgage, it was not recorded until March 29, 2009, as Instrument Number 200908665.)

25. Despite repeated demands therefor, Ricker has yet to receive the return of any of his $400,000.00.

26. On April 14, 2009, Madeira filed a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Pennsylvania in Harrisburg. Madeira's petition is docketed to No. 1:09-bk-02819-MDF.

7

27. Given Madeira's bankruptcy and the three mortgages which have priority over the Ricker Mortgage, the Note and the Ricker Mortgage which Ahrens prepared to secure the $400,000.00 advanced by Ricker are of no value.

## COUNT I – FOR PROFESSIONAL LIABILITY AGAINST AHRENS

28. Ricker hereby incorporates herein by reference as thought set forth in full the preceding Paragraphs 1-27 of this Complaint.

29. Ahrens is an attorney licensed to practice law in the Commonwealth of Pennsylvania with offices in Cumberland County, Pennsylvania. Ricker is asserting a professional liability claim against Ahrens.

30. Ahrens acted as Ricker's attorney in the transaction with Madeira and Healy by drafting the Note and the Ricker Mortgage which Ahrens said would secure the repayment of Ricker's investment. Preparation of the Note and the Ricker Mortgage was well within Ahrens' competence as an attorney.

31. Ahrens directed Ricker to transfer the $400,000.00 which was to be used to fund the transaction with Madeira into Ahrens Law's account. Ricker agreed to wire $400,000.00 into Ahrens Law's account based on Ahrens' assurances that the Note and Mortgage which Ahrens would prepare would secure the repayment of the funds advanced by Ricker.

32. Ahrens directed Ricker to come to Ahrens' law office to finalize the transaction and to obtain the documents prepared by Ahrens which would secure the repayment of Ricker's $400,000.00.

33. Ahrens never advised Ricker to obtain independent counsel, or to have independent counsel review the documents, i.e. the Note and the Ricker Mortgage, prepared by Ahrens.

Ahrens never indicated to Ricker that Ahrens did not represent Ricker's interests in the transaction with Madeira and Healy.

34.   Ahrens conveyed the impression to Ricker, and under the circumstances it was reasonable for Ricker to believe, that Ahrens was acting as Ricker's attorney and representing Ricker's interests in the transaction with Madeira and Healy.

35.   Ricker accepted and relied upon the advice and legal services provided to him by Ahrens in connection with the transaction with Madeira and Healy.

36.   Ahrens failed to exercise ordinary skill and knowledge in his representation of Ricker in the transaction with Madeira and Healy when Ahrens represented to Ricker that the transaction with Madeira represented a "no risk," fully secure investment opportunity.

37.   Ahrens failed to exercise ordinary skill and knowledge in his representation of Ricker in the transaction with Madeira and Healy when Ahrens failed to ensure that the documents which he drafted would in fact secure the repayment of Ricker's investment, and when he failed to advise Ricker of the three mortgages on the Property which Madeira Operations had granted to other parties before Madeira Operations executed the Ricker Mortgage.

38.   Ahrens failed to exercise ordinary skill and knowledge in his representation of Ricker in the transaction with Madeira and Healy when Ahrens failed to advise Ricker to obtain an examination of the title to the Property owned by Madeira Operations before transferring $400,000.00 to Ahrens, to ensure that the Ricker Mortgage would have priority over any other liens against the Property, and when Ahrens failed to advise Ricker to obtain an examination of Madeira's and Healy's credit history.

9

39.   Ahrens failed to exercise ordinary skill and knowledge in his representation of Ricker in the transaction with Madeira and Healy because the documents drafted by Ahrens failed to contain such standard provisions as a clause authorizing the confession of judgment against Madeira (the Note) or against the Property (the Ricker Mortgage), thereby rendering it more difficult and more expensive for Ricker to recover any portion of his investment in the event of a default.

40.   Alternatively, Ahrens failed to exercise ordinary skill and knowledge by failing to advise Ricker to have independent counsel examine the Note and the Ricker Mortgage before Ricker wired $400,000.00 into Ahrens Law's account, and by failing to advise Ricker that Ahrens did not represent Ricker's interests in the transaction with Madeira and Healy.

41.   By reason of Ahrens' negligence, as aforesaid, Ricker has suffered damage by the loss of the $400,000.00 which he advanced through Ahrens Law to Madeira and Healy.

42.   The amount sought by Ricker in this action exceeds the amount required for submission of the matter to compulsory arbitration.

WHEREFORE, Plaintiff, David E. Ricker, respectfully requests the Court to enter judgment in his favor and against Ahrens, and to direct Ahrens to pay to Ricker damages in the amount of $400,000.00, plus prejudgment and post-judgment interest, costs of suit, and to award to Ricker such other and further general relief which the Court deems appropriate.

## COUNT II – PROFESSIONAL LIABILITY AGAINS AHRENS LAW

43.   Ricker hereby incorporates herein by reference as thought set forth in full the preceding Paragraphs 1-27 and 29-42 of this Complaint.

44. Upon information and belief, when Ahrens represented Ricker in the transaction with Madeira, Ahrens was an officer and employee of Ahrens Law.

45. Upon information and belief, when Ahrens represented Ricker in the transaction with Madeira, Ahrens was acting within the scope of his employment with, and as an agent of, Ahrens Law.

46. Ahrens Law is liable for the actions of its officer, agent and employee Ahrens.

47. Consequently, Ahrens Law is liable to Ricker for the damages caused to Ricker by Ahrens while acting within the scope of his employment with Ahrens Law.

WHEREFORE, Plaintiff, David E. Ricker, respectfully requests the Court to enter judgment in his favor and against Ahrens Law, and to direct Ahrens Law to pay to Ricker damages in the amount of $400,000.00, plus prejudgment and post-judgment interest, costs of suit, and to award to Ricker such other and further general relief which the Court deems appropriate.

## COUNT III – FOR NEGLIGENT MISREPRESENTATION AGAINST AHRENS AND AHRENS LAW

48. Ricker hereby incorporates herein by reference as thought set forth in full the preceding Paragraphs 1-27, 29-42 and 44-47 of this Complaint.

49. Ahrens represented to Ricker that the investment opportunity with Ahrens, Madeira and Healy carried no risk and promised a guaranteed return.

50. Ahrens represented to Ricker that the Note and the Mortgage would fully secure the $400,000.00 which Ricker invested.

51. Ahrens represented to Ricker that Ricker would receive repayment in full of his $400,000.00 investment, plus a 50 percent profit of $200,000.00, within less than four months.

11

52. Ahrens knew, or should have known, that these representations were false.

53. Ahrens made all of these representations to Ricker in order to induce Ricker to transfer $400,000.00 through Ahrens Law's account to Madeira and Healy.

54. When Ahrens made these representations, he did so in the course of his employment, and as an officer and agent of Ahrens Law.

55. Given Ahrens' status as an attorney representing Ricker in the transaction, Ricker justifiably relied on Ahrens' representations.

56. As a direct result of his justifiable reliance on Ahrens' representations, Ricker has suffered the loss of $400,000.00.

WHEREFORE, Plaintiff, David E. Ricker, respectfully requests the Court to enter judgment in his favor and against Ahrens and Ahrens Law, and to direct Ahrens and Ahrens Law to pay to Ricker damages in the amount of $400,000.00, plus prejudgment and post-judgment interest and costs of suit, and to award to Ricker such other and further general relief which the Court deems appropriate.

## COUNT IV – FOR BREACH OF FIDUCIARY DUTY AGAINST AHRENS AND AHRENS LAW

57. Ricker hereby incorporates herein by reference as thought set forth in full the preceding Paragraphs 1-27, 29-42, 44-47 and 49-56 of this Complaint.

58. As his attorney, Ahrens owed a fiduciary duty to Ricker.

59. Ahrens breached his fiduciary duty to Ricker by making the false representations to Ricker set forth in Paragraphs 49 through 51 of this Complaint.

60. Ahrens breached his fiduciary duty to Ricker by failing to ensure that Ricker's investment of $400,000.00 was fully secured.

12

61. Ahrens breach of his fiduciary duty to Ricker caused Ricker to suffer damages in the amount of $400,000.00.

62. Ahrens breached his fiduciary duty to Ricker while acting within the scope of and during the course of his employment with Ahrens Law.

WHEREFORE, Plaintiff, David E. Ricker, respectfully requests the Court to enter judgment in his favor and against Ahrens and Ahrens Law, and to direct Ahrens and Ahrens Law to pay to Ricker damages in the amount of $400,000.00, plus prejudgment and post judgment interest, costs of suit, and to award to Ricker such other and further general relief which the Court deems appropriate.

Dated: May 28, 2009

Of Counsel

**BECKLEY & MADDEN**
212 North Third Street
P.O. Box 11998
Harrisburg, PA 17108-1998
(717) 233-7691

Respectfully submitted,

John G. Milakovic, Esquire
Attorney No. 34843

Charles O. Beckley, II, Esquire
Attorney No. 47564

Attorneys for Plaintiff
David E. Ricker

13

## VERIFICATION

I, David E. Ricker, hereby verify that I am an adult individual and that I am the Plaintiff in the foregoing Complaint; and that the facts set forth therein are true to the best of my knowledge and information. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S. §4904, relating to unsworn falsification to authorities.

Dated: 5/28/09

David E. Ricker

Exhibit A

# NOTE

December 11, 2008
Mechanicsburg, Pennsylvania

      FOR VALUE RECEIVED, Alfred L. Madeira (hereinafter referred to as the "Maker") hereby promises to pay to the order of David E. Ricker (the "Payee"), the principal sum of Four Hundred Thousand Dollars ($400,000.00) in lawful money of the United States of America. Maker hereby promises to pay total fees and interest of Two Hundred Thousand Dollars ($200,000.00) in lawful money of the United States on or before the Maturity Date as defined below in Section 1.1 of this Note. Total money returned is $600,000.00.

## Payment of Principal and Interest

      1.     Principal and interest shall be payable, in lawful money of the United States of America, at the office of the Payee or such other place as the holder of this Note may designate, in the following manner:

          1.1    On March 31, 2009, all amounts owed are due in full, which is called the Maturity Date.

## Late Charges

      2.     The Maker agrees that in the event any payment shall be overdue for a period in excess of thirty (30) days, the Maker shall pay to the Payee a late charge of five percent (5%) of the amount overdue to cover the additional expense incident to delinquency. This shall not be construed to obligate the Payee to accept any overdue installment nor to limit the Payee's rights and remedies for the Maker's default as set forth in this Note.

## No Transfer

      3.     If the Maker shall, without in each instance obtaining the prior written consent of the Payee, sell, transfer, lease, or convey (herein all called "Transfer") the Mortgaged Property or any interest in it, whether voluntarily or by operation of law, then, at the option of the Payee, the maturity of this Note shall be advanced to the date of the Transfer, and the obligations of the Maker under this Note shall immediately be due and payable. For purposes of this paragraph, if the Maker is a corporation, the sale or transfer of any stock of the Maker or the issuance of additional stock of the Maker that results in a transfer of control of the Maker shall constitute a Transfer of the Mortgaged Property; if the Maker is a partnership, the sale or transfer of any partnership interest in the Maker shall constitute a Transfer of the Mortgaged Property.

## Events of Default

4.　　If the Maker fails to pay any sum when due or if the Maker shall in any other way be in default under this Note or if any certification, warranty, or representation made by the Maker to the Payee proves to be materially false, then the entire unpaid principal balance of this Note, together with interest accrued and with all other sums due or owed by the Maker under this Note shall at the option of the Payee and without notice to the Maker become due and payable immediately with interest. After the default and acceleration and until the Maker's indebtedness to the Payee is paid in full, including the period following entry of any judgment, the interest shall accrue at a rate of eight percent (8%) per year. The Maker shall also be liable for attorneys' fees for collection of the Note in the amount of five percent (5%) of the total amount then due by the Maker to the Payee, but in any event not less than $3,000.00 and the cost of any title search incurred by the Payee in connection with the proceedings. Payment of these amounts may be enforced and recovered by the entry of judgment on this Note and the issuance of execution on the judgment. Time is of the essence.

## Cumulative Remedies

5.　　The remedies of the Payee provided in this Note or otherwise available to the Payee at law or in equity and the warrants of attorney herein or therein contained, shall be cumulative and concurrent, and may be pursued singly, successively, and together at the sole discretion of the Payee, and may be exercised as often as occasion therefore shall occur. The failure to exercise any right or remedy shall in no event be construed as a waiver or release of the right or remedy.

## Waivers

6.　　The Maker hereby releases the Payee and the attorney or attorneys from all errors, defects, and imperfections in entering judgment by confession, issuing any process, or instituting any proceedings relating to the confession of judgment.

## Parties

7.　　The words "Payee" and "Maker" in this Note shall be deemed and construed to include the respective heirs, personal representatives, successors, and assigns of the Payee and the Maker. The obligation of the persons named as Maker shall be joint and several

## Construction

8.　　This instrument shall be construed according to and governed by the laws of the Commonwealth of Pennsylvania.

## Consent to Jurisdiction

9.      Maker hereby consents to the exclusive jurisdiction of the Court of Common Pleas of Cumberland County, Pennsylvania, and/or for the United States District Court for the Middle District of Pennsylvania, in any and all actions or proceedings arising hereunder or pursuant hereto, and irrevocably agrees to service of process by certified mail, return receipt requested, to the address for Maker set forth above or to such other address as Maker may direct by notice to Payee.

**IN WITNESS WHEREOF**, the Maker has duly executed this Note under seal on the day and year first written above.

WITNESS (ATTEST):

_____(Seal)
Alfred L. Madeira, Borrower

COMMONWEALTH OF PENNSYLVANIA     :
                                                              : SS
COUNTY OF CUMBERLAND                    :

On this, the _____ day of December A.D., 2008, before me the undersigned

officer, personally appeared Alfred Madeira, known to me (or satisfactorily proven) to be

the persons whose names are subscribed to the within instrument, and acknowledge that

he/she executed the same for the purpose therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary

Exhibit B

# NOTE

December 17, 2008
Mechanicsburg, Pennsylvania

FOR VALUE RECEIVED, Alfred L. Madeira (hereinafter referred to as the "Maker") hereby promises to pay to the order of David E. Ricker (the "Payee"), the principal sum of Four Hundred Thousand Dollars ($400,000.00) in lawful money of the United States of America. Maker hereby promises to pay total fees and interest of Two Hundred Thousand Dollars ($200,000.00) in lawful money of the United States on or before the Maturity Date as defined below in Section 1.1 of this Note. Total money returned is $600,000.00.

## Payment of Principal and Interest

1.  Principal and interest shall be payable, in lawful money of the United States of America, at the office of the Payee or such other place as the holder of this Note may designate, in the following manner:

> 1.1  On March 31, 2009, all amounts owed are due in full, which is called the Maturity Date.

## Late Charges

2.  The Maker agrees that in the event any payment shall be overdue for a period in excess of thirty (30) days, the Maker shall pay to the Payee a late charge of five percent (5%) of the amount overdue to cover the additional expense incident to delinquency. This shall not be construed to obligate the Payee to accept any overdue installment nor to limit the Payee's rights and remedies for the Maker's default as set forth in this Note.

## No Transfer

3.  If the Maker shall, without in each instance obtaining the prior written consent of the Payee, sell, transfer, lease, or convey (herein all called "Transfer") the Mortgaged Property or any interest in it, whether voluntarily or by operation of law, then, at the option of the Payee, the maturity of this Note shall be advanced to the date of the Transfer, and the obligations of the Maker under this Note shall immediately be due and payable. For purposes of this paragraph, if the Maker is a corporation, the sale or transfer of any stock of the Maker or the issuance of additional stock of the Maker that results in a transfer of control of the Maker shall constitute a Transfer of the Mortgaged Property; if the Maker is a partnership, the sale or transfer of any partnership interest in the Maker shall constitute a Transfer of the Mortgaged Property.

### Events of Default

4.     If the Maker fails to pay any sum when due or if the Maker shall in any other way be in default under this Note or if any certification, warranty, or representation made by the Maker to the Payee proves to be materially false, then the entire unpaid principal balance of this Note, together with interest accrued and with all other sums due or owed by the Maker under this Note shall at the option of the Payee and without notice to the Maker become due and payable immediately with interest. After the default and acceleration and until the Maker's indebtedness to the Payee is paid in full, including the period following entry of any judgment, the interest shall accrue at a rate of eight percent (8%) per year.  The Maker shall also be liable for attorneys' fees for collection of the Note in the amount of five percent (5%) of the total amount then due by the Maker to the Payee, but in any event not less than $3,000.00 and the cost of any title search incurred by the Payee in connection with the proceedings. Payment of these amounts may be enforced and recovered by the entry of judgment on this Note and the issuance of execution on the judgment. Time is of the essence.

### Cumulative Remedies

5.     The remedies of the Payee provided in this Note or otherwise available to the Payee at law or in equity and the warrants of attorney herein or therein contained, shall be cumulative and concurrent, and may be pursued singly, successively, and together at the sole discretion of the Payee, and may be exercised as often as occasion therefore shall occur. The failure to exercise any right or remedy shall in no event be construed as a waiver or release of the right or remedy.

### Waivers

6.     The Maker hereby releases the Payee and the attorney or attorneys from all errors, defects, and imperfections in entering judgment by confession, issuing any process, or instituting any proceedings relating to the confession of judgment.

### Parties

7.     The words "Payee" and "Maker" in this Note shall be deemed and construed to include the respective heirs, personal representatives, successors, and assigns of the Payee and the Maker. The obligation of the persons named as Maker shall be joint and several

### Construction

8.     This instrument shall be construed according to and governed by the laws of the Commonwealth of Pennsylvania.

**Consent to Jurisdiction**

9.      Maker hereby consents to the exclusive jurisdiction of the Court of Common Pleas of Cumberland County, Pennsylvania, and/or for the United States District Court for the Middle District of Pennsylvania, in any and all actions or proceedings arising hereunder or pursuant hereto, and irrevocably agrees to service of process by certified mail, return receipt requested, to the address for Maker set forth above or to such other address as Maker may direct by notice to Payee.

**IN WITNESS WHEREOF**, the Maker has duly executed this Note under seal on the day and year first written above.

WITNESS (ATTEST):

_____ (Seal)
Alfred W. Madeira, Borrower


COMMONWEALTH OF PENNSYLVANIA        :
                                    : SS
COUNTY OF CUMBERLAND                :

On this, the _17th_ day of December A.D., 2008, before me the undersigned

officer, personally appeared Alfred Madeira, known to me (or satisfactorily proven) to be

the persons whose names are subscribed to the within instrument, and acknowledge that

he/she executed the same for the purpose therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Thomas J. Ahrens, Notary Public
Upper Allen Township, Cumberland County
My commission expires February 15, 2011

Exhibit C

AFTER RECORDING RETURN TO:
AHRENS LAW FIRM, P.C.
52 Gettysburg Pike
Mechanicsburg, PA 17055

Prepared By:


Parcel No.:

————————————————(Space Above This Line for Recording Data)————————————————

## MORTGAGE

**THIS MORTGAGE** is made this *17th* day of December, 2008, between the Mortgagor, Madeira Operations, LLC a Pennsylvania Limited Liability Company, (herein "Borrower" or "Mortgagor") whose address is 1124 Kennebec Drive, Chambersburg, Pennsylvania, and the Mortgagee, David Ricker, (herein "Lender" or "Mortgagee").

**WHEREAS**, Borrower is indebted to Lender in the principal sum of Four Hundred Thousand Dollars ($400,000.00), which indebtedness is evidenced by Borrower's note dated **December 17, 2008** (herein "Note"), due and payable on March 31, 2009.

**TO SECURE** to Lender (a) the repayment of the indebtedness evidenced by the Note, with interest thereon, the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage, and the performance of the covenants and agreements of Borrower herein contained, and (b) the repayment of any future advances, with interest thereon, made to Borrower by Lender pursuant to paragraph 21 hereof (herein "Future Advances"), Borrower does hereby mortgage, grant and convey to Lender certain property located in the County of Cumberland, Commonwealth of Pennsylvania which is more fully described in Exhibit "A" attached hereto, which has the address of 277 Stoner Road, Mechanicsburg, PA 17055 (herein "Property Address");

**TOGETHER** with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water, water rights, and water stock, and all fixtures now, or hereafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are herein referred to as the "Property."

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, that the Property is unencumbered, and that Borrower will warrant and defend generally the title to the Property against all claims and demands, subject to any declarations, easements or restrictions listed in a schedule of exceptions to coverage in any title insurance policy insuring Lender's interest in the Property.

1

Initials

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1.    **Payment of Principal and Interest.** Borrower shall promptly pay when due the principal of and interest on the indebtedness evidenced by the Note, prepayment and late charges as provided in the Note, and the principal of and interest on any Future Advances secured by this Mortgage.

2.    **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly installments of principal and interest are payable under the Note, until the note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments which may attain priority over this Mortgage, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof.

The Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account, or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Mortgage that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Mortgage.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower' option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency within 30 days from the date notice is mailed by Lender to Borrower requesting payment thereof.

2

Upon payment in full of all sums secured by this Mortgage, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 18 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Mortgage.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, then to the principal of the Note, and then to interest and principal on any Future Advances.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any, in the manner provided under paragraph 2 hereof or, if not paid in such manner, by Borrower making payment, when due, directly to the payee thereof. Borrower shall promptly furnish to Lender all notices of amounts due under this paragraph, and in the event Borrower shall make payment directly, Borrower shall promptly furnish to Lender receipts evidencing such payments. Borrower shall promptly discharge any lien which has priority over this Mortgage; provided, that Borrower shall not be required to discharge any such lien so long as Borrower shall agree in writing to the payment of the obligation secured by such lien in a manner acceptable to Lender, or shall in good faith contest such lien by, or defend enforcement of such lien in, legal proceedings which operate to prevent the enforcement of the lien or forfeiture of the Property or any part thereof.

5. **Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require; provided, that Lender shall not require that the amount of such coverage exceed that amount of coverage required to pay the sums secured by this Mortgage.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All premiums on insurance policies shall be paid in the manner provided under paragraph 2 hereof or, if not paid in such manner, by Borrower making payment, when due, directly to the insurance carrier.

All insurance policies and renewals thereof shall be in form acceptable to Lender and shall include a standard mortgage clause in favor of and in form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, and Borrower shall promptly furnish to Lender all renewal notices and all receipts of paid premiums. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

3

Initials

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, provided such restoration or repair is economically feasible and the security of this Mortgage is not thereby impaired. If such restoration or repair is not economically feasible or if the security of this Mortgage would be impaired, the insurance proceeds shall be applied to the sums secured by this Mortgage, with the excess, if any, paid to Borrower. If the Property is abandoned by Borrower, or if Borrower fail to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Mortgage.

Unless Lender and Borrower otherwise agree in writing, any such application of proceeds to principal shall not extend or postpone the due date of the monthly installments referred to in paragraphs 1 and 2 hereof or change the amount of such installments. If under paragraph 18 hereof the Property is acquired by Lender, all right, title and interest of Borrower in and to any insurance policies and in and to the proceeds thereof resulting from damage to the Property prior to the sale or acquisition shall pass to Lender to the extent of the sums secured by this Mortgage immediately prior to such sale or acquisition.

6.    **Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower' obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents. If a condominium or planned unit development rider is executed by Borrower and recorded together with this Mortgage, the covenants and agreements of such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Mortgage as if the rider were a part hereof.

7.    **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, including, but not limited to, eminent domain, insolvency, code enforcement, or arrangements or proceedings involving a bankrupt or decedent, then Lender at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums and take such action as is necessary to protect Lender's interest, including, but not limited to, disbursement of reasonable attorney's fees and entry upon the Property to make repairs. If Lender required mortgage insurance as a condition of making the loan secured by this Mortgage, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower' and Lender's written agreement or applicable law. Borrower shall pay the amount of all mortgage insurance premiums in the manner provided under paragraph 2 hereof.

4

Initials

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof, and shall bear interest from the date of disbursement at the rate payable from time to time on outstanding principal under the Note unless payment of interest at such rate would be contrary to applicable law, in which event such amounts shall bear interest at the highest rate permissible under applicable law. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

8.    **Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

9.    **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Mortgage, with the excess, if any, paid to Borrower. In the event of a partial taking of the Property, unless Borrower and Lender otherwise agree in writing, there shall be applied to the sums secured by this Mortgage such proportion of the proceeds as is equal to that proportion which the amount of the sums secured by this Mortgage immediately prior to the date of taking bears to the fair market value of the Property immediately prior to the date of taking, with the balance of the proceeds paid to Borrower.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fail to respond to Lender within 30 days after the date such notice is mailed, Lender is authorized to collect and apply the proceeds, at Lender's option, either to restoration or repair of the Property or to the sums secured by this Mortgage.

Unless Lender and Borrower otherwise agree in writing, any such application of proceeds to principal shall not extend or postpone the due date of the monthly installments referred to in paragraphs 1 and 2 hereof or change the amount of such installments.

10.    **Borrower Not Released.** Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower' successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest.

5

Initials

11. **Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy. The procurement of insurance or the payment of taxes or other liens or charges by Lender shall not be a waiver of Lender's right to accelerate the maturity of the indebtedness secured by this Mortgage.

12. **Remedies Cumulative.** All remedies provided in this Mortgage are distinct and cumulative to any other right or remedy under this Mortgage or afforded by law or equity, and may be exercised concurrently, independently or successively.

13. **Successors and Assigns Bound; Joint and Several Liability; Captions.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17 hereof. All covenants and agreements of Borrower shall be joint and several. The captions and headings of the paragraphs of this Mortgage are for convenience only and are not to be used to interpret or define the provisions hereof.

14. **Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail, return receipt requested, to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

15. **Uniform Mortgage; Governing Law; Severability.** This form of mortgage combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property. This Mortgage shall be governed by the law of the jurisdiction in which the Property is located. In the event that any provisions or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of the Mortgage and the Note are declared to be severable.

16. **Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation hereof.

17. **Transfer of the Property; Assumption.** If all or any part of the Property or an interest therein is sold or transferred by Borrower without Lender's prior written consent, Lender may, at Lender's option, declare all the sums secured by this Mortgage to be immediately due and payable. Lender shall have waived such option to accelerate if, prior to the sale or transfer, Lender and the person to whom the Property is to be sold or transferred reach agreement in

6

Initials

writing that the credit of such person is satisfactory to Lender and that the interest payable on the sums secured by this Mortgage shall be at such rate as Lender shall request. If Lender has waived the option to accelerate provided in this paragraph 17, and if Borrower's successor in interest has executed a written assumption agreement accepted in writing by Lender, Lender shall release Borrower from all obligations under this Mortgage and the Note.

If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 14 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 18 hereof.

## NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

18.     **Acceleration; Remedies.** Upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall mail notice to Borrower as provided by applicable law specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 30 days from the date the notice is mailed to Borrower, by which such breach must he cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the breach is not cured on or before the date specified in the notice, Lender at Lender's option may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. Lender shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorney's fees, and costs of documentary evidence, abstracts and title reports.

19.     **Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Mortgage, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to at least one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Mortgage if (a) Borrower pay Lender all sums which would be then due under this Mortgage, the Note and notes securing Future Advances, if any, had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pay all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage and in enforcing Lender's remedies as provided in paragraph 18 hereof, including, but not limited to, reasonable attorney's fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower' obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage

7

and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

20.     **Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assign to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 18 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 18 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver, shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorney's fees, and then to the sums secured by this Mortgage. Lender and the receiver shall be liable to account only for those rents actually received.

21.     **Future Advances.** Upon request of Borrower, Lender, at Lender's option prior to release of this Mortgage, may make Future Advances to Borrower. Such Future Advances, with interest thereon, shall be secured by this Mortgage when evidenced by promissory notes stating that said notes are secured hereby. At no time shall the principal amount of the indebtedness secured by this Mortgage, not including sums advanced in accordance herewith to protect the security of this Mortgage, exceed the original amount of the Note.

22.     **Release.** Upon payment of all sums secured by this Mortgage, Lender shall discharge this Mortgage, without charge to Borrower. Borrower shall pay all costs of recordation, if any.

23.     **Purchase Money Mortgage.** If all or part of the sums secured by this Mortgage are lent to Borrower to acquire title to the Property, this Mortgage is hereby declared to be a purchase money mortgage.

24.     **Hazardous Substances.**

(a)     Mortgagors shall not hereafter use, store, generate or discharge, or cause or permit to be used, stored, generated or discharged, any toxic or hazardous waste or materials at the Property, nor allow a lien to be imposed on the Property pursuant to any applicable environmental law.  If it shall be determined that any predecessor in title to the Property caused or permitted any such discharge, and action by Mortgagors to clear the Property of such waste or material is not instituted and completed within such periods of time as may be allowed to Mortgagors by the governmental authorities with jurisdiction over the Property, such failure shall constitute an "Event of Default" under this Mortgage.

(b)     If Mortgagors receive any notice of (I) the happening of any event involving the use, storage, spill, discharge or cleanup of any hazardous or toxic waste or material or any oil or

8

Initials

pesticide on or about any property of Mortgagors, including without limitation, the Property, or any portion thereof, or caused by Mortgagors (a "Hazardous Discharge"), or (ii) any complaint, order, citation or notice with regard to air emissions, water discharges, noise emissions or any other environmental, health or safety matter affecting Mortgagors, the Property, or any portion thereof, or its or Mortgagors' operations (an "Environmental Complaint") from any person or entity including without limitation, the Department of Environmental Protection of the Commonwealth of Pennsylvania (the "DEP"), the United States Environmental Protection Agency (the "EPA"), the United States Army Corps of Engineers (the "Corps"), or the United States Coast Guard (the "Coast Guard"), then Mortgagors will immediately give written notice of same to Mortgagee and shall promptly comply with its obligations under law with regard to such Hazardous Discharge or Environmental Complaint.

(c)     Without limiting Mortgagee's rights under this Mortgage, Mortgagee shall have the right, but not the obligation, to exercise any of its rights as may be provided for elsewhere in this Mortgage or to enter onto the Property or to take such other actions as it deems necessary or advisable to clean up, remove, resolve, or minimize the impact of or otherwise deal with, any such Hazardous Discharge or Environmental Complaint upon its receipt of any notice from any person or entity, including without limitation, the DEP, the EPA, the Corps, the Coast Guard or Mortgagors, asserting the happening of a Hazardous Discharge or Environmental Complaint which, if true, could result in any order, suit or other action against Mortgagors and/or the Property; or any portion thereof, by any governmental agency or otherwise which, in the sole opinion of Mortgagee, could jeopardize its security under this Mortgage or any portion thereof; provided, however, that Mortgagors have not immediately commenced and is diligently pursuing either (x) the cure or correction, in form, scope and substance acceptable to Mortgagee and the agency or entity asserting the happening of the Hazardous Discharge or Environmental Complaint, or of the event which constitutes the basis for the Hazardous Discharge or Environmental Complaint, and is continuing diligently to pursue such cure or correction to completion, or (y) proceedings for an injunction, a restraining order or other appropriate emergency relief preventing such agency or entity from asserting such claim, which relief is granted within ten (10) days of the occurrence giving rise to the claim and the injunction, order or emergency relief if not thereafter dissolved or reversed on appeal, and in either of the foregoing events, Mortgagors have posted cash, a bond, letter of credit or other security satisfactory in form, substance and amount to both Mortgagee and the agency or entity asserting the Hazardous Discharge or Environmental Complaint to secure the proper and complete cure or correction of the event which constitutes the basis for the claim.  All costs and expenses, including without limitation, legal fees and expenses, incurred by Mortgagee in the exercise of any such rights shall be payable by Mortgagors upon demand with interest thereon at the Default Rate as defined in the Note, from the date of payment to the date Mortgagee is reimbursed by Mortgagors, and shall be secured by this Mortgage and all other collateral granted to Mortgagee by Mortgagors.

(d)     In addition to those events previously specified, the occurrence of any of the following events shall constitute an Event of Default under this Mortgage, entitling Mortgagee to all of the rights and remedies provided, therefore:

9

(I)    If Mortgagee receives its first notice of a Hazardous Discharge or Environmental Complaint other than from Mortgagors, and Mortgagee does not receive a required notice (which must be given in written form as required by this Mortgage) of such Hazardous Discharge or Environmental Complaint from Mortgagors within ten (10) business days of the date Mortgagee first receives said notice other than from Mortgagors; provided, however, that Mortgagors have in fact received such notice, or

(ii)    If the DEP, EPA or any other state or federal agency asserts or creates a lien upon any or all of the Property by reason of the occurrence of a Hazardous Discharge or Environmental Complaint or otherwise; or

(iii)    If the DEP, EPA or any other state or federal agency asserts a claim against the Mortgagors, the Property or Mortgagee for damages or cleanup costs related to a Hazardous Discharge or Environmental Complaint.

(e)    Mortgagors hereby agree to defend, indemnify, and hold Mortgagee harmless from and against any and all claims, losses, liabilities, damages and expenses (including without limitation, cleanup costs and attorneys' fees and expenses, including those arising by reason of any of the aforesaid or an action against Mortgagors under this indemnity) arising directly or indirectly from, out of, or by reason of any Hazardous Discharge, Environmental Complaint or any environmental, health or safety law governing Mortgagors, its operations or the Property, or any portion thereof. This subparagraph (e) shall survive the foreclosure, expiration or sooner termination of this Mortgage.

25.    **Consent to Jurisdiction.** Mortgagors hereby consent to the exclusive jurisdiction of the Court of Common Pleas of Cumberland County Pennsylvania, and/or the United States District Court for the Middle District of Pennsylvania in any and all actions or proceedings arising hereunder or pursuant hereto, and irrevocably agrees to service of process by personal service upon Mortgagors wherever Mortgagors may be then located, or by certified or registered mail, return receipt requested, directed to Mortgagors at their last known address.

26.    **WAIVER OF RIGHT TO JURY TRIAL. MORTGAGORS HEREBY WAIVE THE RIGHT TO HAVE ANY CONTROVERSIES OR MATTERS ARISING HEREUNDER OR RELATED TO THE OBLIGATIONS SECURED HEREBY TRIED BY A JURY.**

27.    **Covenant Running with the Land.** Any act or agreement to be done or performed by Mortgagors shall be construed as a covenant running with the land and shall be binding upon Mortgagors and its successors, heirs and assigns as if they had personally made such agreement.

**IN WITNESS WHEREOF**, Borrower has executed this Mortgage.

WITNESS (ATTEST):

_____    X _____ (Seal)

Alfred L. Madeira, Member, Manager
Madeira Operations, LLC

COMMONWEALTH OF PENNSYLVANIA    :
                                 : SS

COUNTY OF CUMBERLAND               :

On this, the 17th day of December, A.D., 2008, before me the undersigned officer, personally appeared Alfred L. Madeira, Sole Member, Manager, Madeira Operations, LLC known to me (or satisfactorily proven) to be the persons whose names are subscribed to the within instrument, and acknowledge that they executed the same for the purpose therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Thomas J. Ahrens, Notary Public
Upper Allen Township, Cumberland County
My commission expires February 15, 2011

Notary Public

I hereby certify that the precise address of the within-named Mortgagee is:

_____

Attorney for Mortgagee

11

_____  Initials

Tax Parcel # 22-10-0644-034
Tax Parcel # 22-11-0278-011

# EXHIBIT "A"

**ALL THAT CERTAIN** piece or parcel of land, situate in the Township of Monroe, County of Cumberland and State of Pennsylvania, more particularly bounded and described as follows, to wit:

**TRACT NO. 1 BEGINNING** at a point in Stoner Road; thence by land now or formerly of George R. Eppley, North 40 degrees 00 minutes 00 seconds East, one thousand eighty two and eighty five hundredths (1082.85) feet to a pin; thence South 48 degrees 26 minutes 22 seconds East, one thousand three hundred sixty-two and sixty three hundredths (1362.63) feet to a point in Williams Grove Road; thence by said road, South 39 degrees 38 minutes 26 seconds West, one thousand eighty-five and nine hundredths (1085.09) feet to a point in the first above mentioned public road; thence by the same road, North 48 degrees twenty-one minutes sixteen seconds West, one thousand three hundred sixty-nine and fifty hundredths (1369.50) feet to the place of BEGINNING.

**CONTAINING** 33.9773 acres

**BEING** Lot #1 of the Final Subdivision plan for Frank E. Stoner, Sr. & Dorothy M, h/w prepared by Gerrit J. Betz Associates, Inc. on May 15, 1986 and recorded in Plan Book 50, at Page 129 in the recorder of Deeds Office in and for Cumberland County.

**TRACT NO. 2 BEGINNING** at a point on the Western side of Williams Grove Road at southeast corner of land now or formerly of Terry Stoner, being Lot No. 1 on the Plan of Lots of Frank E. Stoner, as recorded in Plan Book 57, at page 53, Cumberland County Recorder of Deed's Office; thence by lot No. 1 South 87 degrees 32 minutes 12 seconds West nine hundred eighty and fifty-one hundredths (980.51) feet to a point; thence South 00 degrees 28 minutes 00 seconds West three hundred thirty-seven and seventy-one hundredths (337.71) feet to a pin; thence South 88 degrees 45 minutes 00 seconds East none hundred eighty-one and twenty eight hundredths (981.28) feet to a point on the western side of Williams Grove Road; thence by the western side of Williams Grove Road north 00 degrees 11 minutes 11 seconds East four hundred one and twenty-five hundredths (401.25) feet to a point the place of BEGINNING.

**BEING** Lot No. 2 on the plan of Lots of Frank E. Stoner, as recorded in Plan Book 57, at page 53, Cumberland County Recorder of Deed's office.

**EXCEPTING** from the above tract the following parcel.

**BEGINNING** at a point located on the western right of way line of Williams Grove Road (S.R. 2011) a 06 foot right-of-way, said point being the southeastern property corner of lands now or formerly of Barry L. Loreman and the northeastern property corner of lands now or formerly of Frank E. & Dorothy M. Stoner; thence from point of beginning along said right-of-way line South 01 degrees 17 minutes 17 seconds West a distance of 225.70 feet to a point; thence along lands now or formerly of Frank E. & Dorothy M. Stoner the following courses and distances: 1) South 88 degrees 42 minutes 43 seconds West a distance of 15.00 feet to a point; 2.) North 01 degrees 17 minutes 17 seconds West a distance of 225.00 feet to a point; thence along lands now or formerly of Barry L. Loreman North 86 degrees 02 minutes 04 seconds East a distance of 15.02 feet to a point, said point being the point of BEGINNING.

**CONTAINING** 0.078 acres.

EXHIBIT C

F:\W3872-1002\Pleadings\Complaint-Cumberland-Ahrens-BR.doc

**McELROY, DEUTSCH, MULVANEY**                    **JURY TRIAL DEMANDED**
**& CARPENTER, LLP**
By:    THOMAS R. HURD, ESQUIRE
       MATTHEW A. LIPMAN, ESQUIRE
Identification Nos. 23120, 86892
One Penn Center at Suburban Station
1617 JFK Boulevard - Suite 1500
Philadelphia, PA 19103-1815                       Attorneys for Plaintiffs
(215) 557-2900

---

RANDALL WAGNER, JOHN JARBOE,           IN THE COURT OF COMMON PLEAS
LARRY L. HATTER, JAMES J. GREEN,       OF CUMBERLAND COUNTY
SR., KEITH HOSTLER, ANGELA
HICKEY, ORREL E. PICKLESIMER,          Docket Number: 09 - 4586  *Civil Term*
EXECUTOR OF THE ESTATE OF
EDSEL PICKLESIMER, DECEASED,
MARK RANDALL and NEIL BARR,

              Plaintiffs,

        v.

THOMAS J. AHRENS, ESQUIRE and
AHRENS LAW FIRM, P.C.,

              Defendants

---

## <u>NOTICE</u>

*You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed or any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.*

*YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.*

*IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT PERSONS AT A REDUCED FEE OR NO FEE:*

**Cumberland County Bar Association**
**32 S. Bedford St.**
**Carlisle, PA 17013**
**(800) 990-9180 or**
**(717) 249-3166**

2

**McELROY, DEUTSCH, MULVANEY**
      **& CARPENTER, LLP**
By:    THOMAS R. HURD, ESQUIRE
       MATTHEW A. LIPMAN, ESQUIRE
Identification Nos. 23120, 86892
One Penn Center at Suburban Station
1617 JFK Boulevard - Suite 1500
Philadelphia, PA 19103-1815                    Attorneys for Plaintiffs
(215) 557-2900

---

| | |
|---|---|
| RANDALL WAGNER, JOHN JARBOE, LARRY L. HATTER, JAMES J. GREEN, SR., KEITH HOSTLER, ANGELA HICKEY, ORREL E. PICKLESIMER, EXECUTOR OF THE ESTATE OF EDSEL PICKLESIMER, DECEASED, MARK RANDALL and NEIL BARR, | IN THE COURT OF COMMON PLEAS OF CUMBERLAND COUNTY <br><br> Docket Number: 09-4586 *Civil Term* |
| Plaintiffs, | |
| v. | |
| THOMAS J. AHRENS, ESQUIRE and AHRENS LAW FIRM, P.C., | |
| Defendants | |

---

## COMPLAINT

Plaintiffs, Randall Wagner, John Jarboe, Larry L. Hatter, James J. Green, Sr., Keith

Hostler, Angela Hickey, Orrel E. Picklesimer, Executor of the Estate of Edsel Picklesimer,

Deceased, Mark Randall and Neil Barr, by and through their undersigned counsel, McElroy,

Deutsch, Mulvaney & Carpenter, LLP, file a Complaint against Defendants, Thomas J. Ahrens,

Esquire and Ahrens Law Firm, P.C., and in support thereof aver:

## INTRODUCTION

1.      Plaintiffs, Randall Wagner, John Jarboe, Larry L. Hatter, James J. Green, Sr., Keith Hostler, Angela Hickey, Orrel E. Picklesimer, Executor of the Estate of Edsel Picklesimer, Deceased, Mark Randall and Neil Barr ("Plaintiffs"), all have suffered substantial financial losses as a result of placing their trust in the counsel and advice of Thomas J. Ahrens, Esquire ("Mr. Ahrens") and Ahrens Law Firm, P.C. (Mr. Ahrens and Ahrens Law Firm will be referred to collectively as "Defendants").

2.      Defendants solicited funds from each Plaintiff for "loans" or for alleged "investments" in gold futures and other commodities with Pennsylvania resident Alfred Madeira and Florida residents Sean Healy ("Mr. Healy") and Shalese Healy ("Mrs. Healy").

3.      Rather than invest the approximately $15,000,000 provided to them, Mr. Healy and Mrs. Healy paid off prior investors of their Ponzi scheme, purchased an expensive mansion and exotic automobiles, took extravagant vacations and lived an opulent lifestyle.

4.      But for the Defendants' professional misconduct, the Defendants' breaches of fiduciary duties and the Defendants' negligent misrepresentations, Plaintiffs would not have suffered damages collectively in the principal amount of $8,726,400

## PARTIES

5.      Plaintiffs reallege all prior averments as if set forth at length herein.

6.      Plaintiff, Randall Wagner ("Mr. Wagner") is an adult individual and resident of the Commonwealth of Pennsylvania who maintains an address at 1855 Mansion Lane, Mount Joy, Pennsylvania.

7.    Plaintiff, John Jarboe ("Mr. Jarboe") is an adult individual and resident of the Commonwealth of Pennsylvania who maintains an address at 1855 Mansion Lane, Mount Joy, Pennsylvania.

8.    Plaintiff, Larry L. Hatter, ("Mr. Hatter") is an adult individual and resident of the Commonwealth of Pennsylvania who maintains a post office box at P.O. Box 1218, Mechanicsburg, Pennsylvania.

9.    Plaintiff, James J. Green, Sr. ("Mr. Green") is an adult individual and resident of the Commonwealth of Pennsylvania who maintains an address at 47 Fairview Road, P.O. Box 450, New Cumberland, Pennsylvania.

10.    Plaintiff, Keith Hostler ("Mr. Hostler"), is an adult individual and resident of the Commonwealth of Pennsylvania who maintains an address at 92 Industrial Road, Glen Rock, Pennsylvania.

11.    Plaintiff, Angela Hickey ("Ms. Hickey"), is an adult individual and resident of the Commonwealth of Pennsylvania who maintains a post office box at P.O. Box 112, Scotland, Pennsylvania.

12.    Plaintiff, Orrel E. Picklesimer, Executor of The Estate of Edsel Picklesimer, Deceased ("Estate of Picklesimer"), is the executor of a deceased resident of the Commonwealth of Pennsylvania who maintains an address at 6334 Pemwoods Street, San Antonio, Texas.

13.    Plaintiff, Mark Randall ("Mr. Randall"), is an adult individual and resident of the Commonwealth of Pennsylvania who maintains an address at 18 Brookside Court, Lititz, Pennsylvania.

3

14.     Plaintiff, Neil Barr ("Mr. Barr"), is an adult individual and resident of the Commonwealth of Pennsylvania who maintains an address at 405 Lisburn Heights Drive, Lewisberry, Pennsylvania.

15.     Defendant, Thomas J. Ahrens, Esquire ("Tom Ahrens"), is an adult individual, resident of the Commonwealth of Pennsylvania, and a licensed attorney at law in the Commonwealth of Pennsylvania who maintains an address located at 52 Gettysburg Pike, Mechanicsburg, Pennsylvania.

16.     From 1997 through the present, Ahrens has been a member of the bar of Pennsylvania in good standing.

17.     Defendant, Ahrens Law Firm, P.C., is an association of licensed attorneys who practice under the guise of a Pennsylvania professional corporation, whose principal place of business is 52 Gettysburg Pike, Mechanicsburg, Pennsylvania, 17055.

18.     From at least 2005 through the present, Ahrens was an employee, officer, director and/or managing partner of Ahrens Law Firm, P.C.

## FACTS COMMON TO ALL PLAINTIFFS

19.     Plaintiffs reallege all prior averments as if set forth at length herein.

20.     At some point prior to July, 2008, Defendants had represented each Plaintiff in some capacity by performing some or all of the following legal services: drafting wills, trusts and powers of attorney, forming businesses, serving as corporate counsel, representing estates, bringing and defending litigation and other general legal services.

21.     Prior to July, 2008, each Plaintiff had been a client of Defendants such that an attorney-client relationship existed between Plaintiffs and Defendants.

4

22. At no time have Defendants ever advised any Plaintiff that Defendants were not serving as that Plaintiff's attorneys.

23. Accordingly, at all relevant times, an attorney-client relationship existed between Plaintiffs and Defendants.

24. As such, the professional relationships between Plaintiffs and Defendants were relationships of trust and confidence.

25. In the second half of 2008, Defendants, either through Tom Ahrens or his father, Judd Ahrens, a non-attorney employee of Ahrens Law Firm, P.C., contacted Plaintiffs.

26. In all cases, Defendants presented Plaintiffs with an attractive moneymaking opportunity whereby Plaintiffs could achieve an extraordinarily high rate of return with no risk.

27. Defendants promised rates of return between 20% and 150% within a few months and guaranteed that, at worst, Plaintiffs' principal would be returned in full.

28. While Plaintiffs generally were unaware of each other and various representations were made to each Plaintiff, Defendants represented that Alfred Madeira ("Madeira"), an existing client of Defendants, had been investing in commodities futures, had received very favorable returns on his investments and was seeking others to become involved by lending funds.

29. Tom Ahrens told some Plaintiffs that Madeira had a partnership with Mr. Healy and that Madeira and Mr. Healy were buying gold futures contracts that had been purchased by brokerage firms but were being sold because of liquidity problems on the part of the institutions holding the contracts.

5

30.    Tom Ahrens represented to some Plaintiffs that there was approximately $79,000,000.00 in a brokerage account owned by Madeira and Mr. Healy, but that the account had been restricted by regulators because Mr. Healy had used funds from the account to enter into additional trades before existing trades had cleared.

31.    As a result, Tom Ahrens represented that Madeira and Mr. and Mrs. Healy were short on cash to cover some of the contracts that they had agreed to buy and were looking for additional funds.

32.    Relying upon the representations of Defendants – based in large part upon the heightened credibility of Tom Ahrens as a respected counselor – Plaintiffs provided funds to Tom Ahrens, Ahrens Law Firm, P.C., Madeira and/or Shalese Healy in the following amounts:

| | |
|---|---|
| Larry Hatter | $1,700,000 |
| Randall Wagner | $1,645,700 |
| John Jarboe | $1,645,700 |
| James Green | $1,550,000 |
| Keith Hostler | $800,000 |
| Angela Hickey | $500,000 |
| Estate of Picklesimer | $360,000 |
| Mark Randall | $300,000 |
| Neil Barr | $225,000 |
| **TOTAL** | **$8,726,400** |

33.    Defendants induced some Plaintiffs not only to loan or to invest their available funds but also to liquidate their IRA accounts so that those funds could be used as well.

34.    Defendants induced other Plaintiffs to loan or to invest their businesses' assets in addition to their personal funds.

6

35.    Defendants induced the Estate of Picklesimer to provide funds that were in the possession of Defendants because the estate still had not been finalized.

36.    In some cases, Tom Ahrens and Judd Ahrens provided personal guarantees of repayments to the Plaintiffs.

37.    In some cases, as an additional inducement to participate, Defendants drafted, provided and/or recorded notes and mortgages secured upon real property owned by Madeira, Tom Ahrens, Judd Ahrens and other persons and entities.

38.    Defendants were aware of each Plaintiff's net worth and/or available funds through confidential attorney-client privileged information made available to Defendants through the Defendants' representation of Plaintiffs.

39.    Defendants failed to disclose to Plaintiffs that Defendants expected to receive from Madeira and/or Mr. and Mrs. Healy approximately $8,700,000 – about one dollar for each dollar provided by Plaintiffs to Defendants.

40.    After the funds were provided by the Plaintiffs, the Defendants continually reported the tremendous financial results to Plaintiffs and further represented to each of them that Plaintiffs should expect to receive far more than each Plaintiff initially provided in return.

41.    In February, 2009, prior to the planned distribution date of the funds to Plaintiffs, Defendants contacted Plaintiffs and assured them that the funds would be returned plus the promised gains.

42.    Despite the clear and unambiguous representations of Defendants to Plaintiffs regarding the use of their funds, the expected repayment dates and the performance of the loans and investments, no funds have been provided to Plaintiffs.

7

43.    Unfortunately, it has now become clear that Defendants were the victims of a large-scale Ponzi scheme masterminded by Mr. and Mrs. Healy, and that Mr. and Mrs. Healy used Defendants to deliver high net-worth individuals to them.

## COUNT I—PROFESSIONAL LIABILITY

44.    Plaintiffs reallege all prior averments as if set forth at length herein.

45.    At all relevant times, Plaintiffs had been clients of Tom Ahrens and Ahrens Law Firm and Defendants knew that Plaintiffs would rely upon Defendants' professional skill and judgment to protect Plaintiffs' interests.

46.    Defendants breached their professional duties to Plaintiffs in multiple ways including but not limited to the following:

    a.    Although Rule 1.1 of the Rules of Professional Responsibility requires that a lawyer provide competent representation to a client, including the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation, Defendants failed to investigate whether Mr. or Mrs. Healy were licensed brokers, whether they actually were purchasing gold futures and, if so, what the actual results had been.

    b.    Although Rule 1.4 of the Rules of Professional Responsibility requires that a lawyer shall keep all clients reasonably informed about the status of their matters, promptly comply with reasonable requests for information, and explain matters to the extent reasonably necessary to permit clients to make informed decisions regarding the representation, Defendants (i) failed to keep Plaintiffs reasonably informed about the status of the matter; (ii) failed to disclose obvious

8

conflicts of interests whereby Defendants would obtain "fees" from Madeira and/or Mr. and Mrs. Healy for "delivering" additional funds; and (iii) failed to explain the "loans" and "investments" in such a manner to permit Plaintiffs to be reasonably informed prior to forwarding funds.

c.      Although Rule 1.5 of the Rules of Professional Responsibility requires that a lawyer not charge clients clearly excessive fees, Defendants failed to disclose to Plaintiffs that Defendants intended to earn approximately $8,700,000 as a result of inducing Plaintiffs to participate in the transactions and more than $16,000,000 total – all for work performed by one attorney and one paralegal working part time for approximately nine months.

d.      Although Rule 1.7 of the Rules of Professional Responsibility requires that a lawyer not represent clients if the representation of those clients that will be directly adverse to other clients, Defendants led Plaintiffs to believe that Defendants were representing Plaintiffs when, in fact, Defendants did not believe that they were representing Plaintiffs but instead believed that they were representing Madeira who had interests adverse to those of Plaintiffs inasmuch as Madeira was borrowing funds from Plaintiffs and/or investing Plaintiffs' funds.  Moreover, Defendants attempted to protect friends and family by providing security interests in real property to the detriment of other clients, including some Plaintiffs.

e.     Although Rule 1.8 of the Rules of Professional Responsibility requires that a lawyer not enter into business transactions with clients unless the terms of the transactions are fully disclosed and transmitted in writing to the clients, the clients are advised in writing of the desirability of seeking independent counsel, the clients are given a reasonable opportunity to seek the advice of independent legal counsel and the clients give informed consent in writing to the essential terms of the transactions and the lawyer's role in the transactions, including whether the lawyer is representing the clients in the transactions, Defendants (i) failed to fully disclose the terms of the transactions with Plaintiffs; (ii) failed to transmit the terms of the transactions in writing; (iii) failed to advise Plaintiffs to consult with independent counsel; (iv) failed to advise Plaintiffs that Defendants also had entered into the same or similar transactions with Madeira and Mr. and Mrs. Healy; (v) failed to advise Plaintiffs that Defendants would obtain a "fee" from third parties in an amount roughly equal to the Plaintiffs' principal contribution; and (vi) failed to advise whether Defendants were representing Plaintiffs in the transactions.

f.     Although Rule 1.8 of the Rules of Professional Responsibility requires that a lawyer not use information relating to the representation of clients to the disadvantage of the clients unless the clients give informed consent, Defendants used information regarding Plaintiffs' net worth and liquid assets disclosed to Defendants only through confidential attorney-client communications and exploited such information for the benefit of Defendants and the detriment of Plaintiffs.

10

g.     Although Rule 4.3 of the Rules of Professional Responsibility requires that a lawyer not state nor imply to an unrepresented person that the lawyer is disinterested nor give advice to a person who is not represented by a lawyer, other than the advice to secure counsel, if the lawyer knows or reasonably should know the interests of such person are in conflict or have a reasonable possibility of being in conflict with the interests of the lawyer's client and where the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer should make reasonable efforts to correct the misunderstanding, Defendants (i) gave legal advice to Plaintiffs when Defendants did not believe that they were representing Plaintiffs; (ii) failed to advise Plaintiffs to secure other counsel; (iii) failed to advise Plaintiffs regarding Defendants' role in the transactions; and (iv) failed to correct any misunderstandings that Plaintiffs had that Defendants were not benefitting substantially from Plaintiffs' "loans" or "investments."

47.     As a direct and proximate result of Defendants' negligence and legal malpractice, Plaintiffs have incurred substantial damages in the principal amount of $8,726,400.

WHEREFORE, Plaintiffs, Randall Wagner, John Jarboe, Larry L. Hatter, James J. Green, Sr., Keith Hostler, Angela Hickey, Orrel E. Picklesimer, Executor of the Estate of Edsel Picklesimer, Deceased, Mark Randall and Neil Barr, request that this Honorable Court enter judgment in their favor and against Defendants, Thomas J. Ahrens, Esquire and Ahrens Law Firm, P.C., jointly and severally, in the principal amount of $8,726,400 plus costs, interest and all such further relief that the Court determines to be appropriate.

11

## COUNT II-NEGLIGENT MISREPRESENTATION

48.     Plaintiffs reallege all prior averments as if set forth at length herein.

49.     At various times, Defendants, by and through Tom Ahrens, Judd Ahrens and/or others, made statements to Plaintiffs which were intended to be relied upon.

50.     Such statements included the following:

    a.  Mr. Healy was using the funds provided by Plaintiffs to trade commodities.

    b.  Mr. Healy and Madeira owned an account with a balance of more than $79,000,000 that had been "frozen" by "regulators."

    c.  The loan and/or investment of the funds provided by Plaintiffs to Defendants carried no risk and the principal was guaranteed to be returned.

    d.  Plaintiffs' funds would be returned to them notwithstanding the fact that the proposed repayment date had passed.

51.     Plaintiffs reasonably and justifiably relied upon all such statements because the statements came from their legal counsel whom they trusted to be honest and forthright with them.

52.     Such statements have proven to be false, even though Defendants may not have known of their falsity at the time the representations were made.

53.     As a result of the negligent misrepresentations, Plaintiffs have suffered damages in the principal amount of $8,726,400.

WHEREFORE, Plaintiffs, Randall Wagner, John Jarboe, Larry L. Hatter, James J. Green, Sr., Keith Hostler, Angela Hickey, Orrel E. Picklesimer, Executor of the Estate of Edsel Picklesimer, Deceased, Mark Randall and Neil Barr, request that this Honorable Court enter

judgment in their favor and against Defendants, Thomas J. Ahrens, Esquire and Ahrens Law Firm, P.C., jointly and severally, in the principal amount of $8,726,400 plus costs, interest and all such further relief that the Court determines to be appropriate.

## COUNT III-BREACH OF FIDUCIARY DUTY

54. Plaintiffs reallege all prior averments as if set forth at length herein.

55. Defendants acted as Plaintiffs' fiduciaries in that they counseled Plaintiffs regarding Plaintiffs' financial affairs and received, held and distributed Plaintiffs' funds on behalf of Plaintiffs.

56. As Plaintiffs' attorneys, Defendants owed fiduciary duties to Plaintiffs to provide competent advice, to safeguard Plaintiffs' funds and to insure that such funds were used for proper and lawful purposes.

57. Defendants breached their fiduciary duties to Plaintiffs in that they failed to adequately investigate the loans and investments that they induced Plaintiffs to enter into, failed to counsel Plaintiffs accordingly and failed to receive, hold and distribute Plaintiffs' funds appropriately.

58. Moreover, on one or more occasions, Defendants directed Plaintiffs' funds to a party other than Madeira or Mr. and Mrs. Healy without notifying Plaintiffs of the redirection of the funds.

59. As a result of the Defendants' breaches of their fiduciary duties to Plaintiffs, Plaintiffs have suffered damages in the principal amount of $8,726,400.

13

WHEREFORE, Plaintiffs, Randall Wagner, John Jarboe, Larry L. Hatter, James J. Green, Sr., Keith Hostler, Angela Hickey, Orrel E. Picklesimer, Executor of the Estate of Edsel Picklesimer, Deceased, Mark Randall and Neil Barr, request that this Honorable Court enter judgment in their favor and against Defendants, Thomas J. Ahrens, Esquire and Ahrens Law Firm, P.C., jointly and severally, in the principal amount of $8,726,400 plus costs, interest and all such further relief that the Court determines to be appropriate.

**McELROY, DEUTSCH, MULVANEY<br>& CARPENTER, LLP**

By:     _____

THOMAS R. HURD, ESQUIRE
MATTHEW A. LIPMAN, ESQUIRE
Attorneys for Plaintiffs, Randall Wagner, John
Jarboe, Larry L. Hatter, James J. Green, Sr., Keith
Hostler, Angela Hickey, Orrel E. Picklesimer,
Executor of the Estate of Edsel Picklesimer,
Deceased, Mark Randall and Neil Barr

Dated: July 7, 2009

14

## <u>VERIFICATION</u>

I, Randall Wagner, state that I have reviewed the foregoing Complaint and that the facts set forth therein are true and correct to the best of my knowledge, information and belief. I further state that I understand that the statements herein are made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

*Randall C Wagner*

_____

Randall Wagner

## **VERIFICATION**

I, John Jarboe, state that I have reviewed the foregoing Complaint and that the facts set forth therein are true and correct to the best of my knowledge, information and belief. I further state that I understand that the statements herein are made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

_John A Jarboe_

John Jarboe

## VERIFICATION

I, Larry L. Hatter, state that I have reviewed the foregoing Complaint and that the facts set forth therein are true and correct to the best of my knowledge, information and belief. I further state that I understand that the statements herein are made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.


Larry L. Hatter

## VERIFICATION

I, James J. Green, Sr., state that I have reviewed the foregoing Complaint and that the facts set forth therein are true and correct to the best of my knowledge, information and belief. I further state that I understand that the statements herein are made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

_James J Green Sr._

James J. Green, Sr.

## VERIFICATION

I, Keith Hostler, state that I have reviewed the foregoing Complaint and that the facts set forth therein are true and correct to the best of my knowledge, information and belief. I further state that I understand that the statements herein are made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

Keith Hostler

## VERIFICATION

I, Angela Hickey, state that I have reviewed the foregoing Complaint and that the facts set forth therein are true and correct to the best of my knowledge, information and belief. I further state that I understand that the statements herein are made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

_____
Angela Hickey

## VERIFICATION

I, Orrel E. Picklesimer, Executor of the Estate of Edsel Picklesimer, Deceased, state that I have reviewed the foregoing Complaint and that the facts set forth therein are true and correct to the best of my knowledge, information and belief. I further state that I understand that the statements herein are made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

Orrel E. Picklesimer, Executor of the Estate of
Edsel Picklesimer, Deceased

# VERIFICATION

I, Mark Randall, state that I have reviewed the foregoing Complaint and that the
facts set forth therein are true and correct to the best of my knowledge, information and
belief.  I further state that I understand that the statements herein are made subject to the
penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

_____ *mark wRandall* _____
Mark Randall

## VERIFICATION

I, Neil Barr, state that I have reviewed the foregoing Complaint and that the facts set forth therein are true and correct to the best of my knowledge, information and belief. I further state that I understand that the statements herein are made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

_____      6/19/09
Neil Barr