IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MINNESOTA LAWYERS MUTUAL :
INSURANCE COMPANY
    Plaintiff :

                                  :
    vs.                         CIVIL NO. 1:CV-09-1661
                                  :

THOMAS J. AHRENS, Esquire, :
AHRENS LAW FIRM, P.C.,
DAVID E. RICKER, RANDALL WAGNER,:
JOHN JARBOE, LARRY L. HATTER,
JAMES J. GREEN, SR., :
KEITH HOSTLER, ANGELA HICKEY,
ORREL E. PICKLESIMER, Executor :
of the Estate of Edsel Picklesimer,
MARK RANDALL, NEIL BARR, :
    Defendants


*M E M O R A N D U M*

I.     *Introduction*

        This is a diversity action controlled by Pennsylvania law. Plaintiff, Minnesota Lawyers Mutual Insurance Company (MLM), seeks a declaratory judgment that it has no duty to defend or indemnify defendants, Thomas J. Ahrens, Esq., and his law firm, Ahrens Law Firm, P.C. ("the firm"), in two civil suits pending against them in the Court of Common Pleas of Cumberland County, Pennsylvania. The plaintiffs in those suits, in some capacity all legal clients of Ahrens and the firm, seek to recover funds they lost in investments Ahrens had arranged. At the pertinent times, MLM was the insurer for Ahrens and the law firm for claims arising from the performance of legal services.

        In addition to Ahrens and the firm, MLM has named as defendants in this action the plaintiffs in the underlying state-court actions. Defendant, David E. Ricker,

the only plaintiff in one of the actions, has filed a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). The nine plaintiffs in the second state-court action, which we will call the "*Wagner* action" after the lead plaintiff, have also filed a motion for judgment on the pleadings.

MLM presents several reasons why it has no duty to defend or indemnify. After review of the parties' submissions, we agree with at least one of those reasons, that the policy excludes coverage for claims "arising out of the solicitation or sale of . . . specific investments." We thus need not consider the other reasons and will grant the declaratory relief MLM seeks.

II.     *Standard of Review*

Under Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings." To be successful on a Rule 12(c) motion, the moving party must establish that "no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Rosenau v. Unifund Corp.,* 539 F.3d 218, 221 (3d Cir. 2008)(quoted case omitted). "[W]e must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Id.* (quoted case omitted).

The complaints in the underlying state-court actions are part of the pleadings because they are attached to MVM's complaint as exhibits. *See* Fed. R. Civ. P. 10(c). *See also Churchill v. Star Enterprises*, 183 F.3d 184, 190 n.5 (3d Cir. 1999). In any event, as public records, they may be considered on a Rule 12(c) motion. *Id.*; *Sutton v. Royal Chevrolet-Oldsmobile-Pontiac-Buick, Inc.*, No. 03-1825, 2004 WL 90071, at *3 n.3 (E.D. Pa. Jan. 15, 2004).

III.     *Background*

   A.     *The Pertinent Policy Language*

   The policy obligated MLM to insure Ahrens and the firm for losses suffered "arising out of any act, error or omission of the INSURED . . . resulting from the rendering or failing to render PROFESSIONAL SERVICES while engaged in the private practice of law . . . ."  (Doc. 28-2, CM/ECF p. 5, Am. Compl., Ex. A).[1]  The policy defines "professional services," in pertinent part, as "legal or notary services for others . . . ."  (*Id.*, p. 7).  The policy contains several exclusions.  One of those exclusions precludes coverage for "any CLAIM arising out of the solicitation or sale of specific securities or specific investments by any INSURED."  (*Id.*).

   B.     *The* Ricker *Action*

   In his state-court complaint (his second amended complaint), Ricker alleges the following, in relevant part.  In November 2008, Ahrens and the firm did some legal work for him and a business partner.  (Doc. 28-3, p. 3 ¶ 4).  During a cell phone call regarding those services, Ahrens spoke "about a possible investment opportunity . . . involv[ing] the purchase of gold" that "guaranteed a 100-percent profit and presented no risk" because any funds invested "would be secured by a note and a mortgage on real property."  (*Id.* ¶ 5).

   Ricker later "contacted Ahrens about the investment opportunity."  (*Id.*, ¶ 6).  Ahrens told him that it was "fully-subscribed," (*id.*), "but that another opportunity existed which would guarantee a 50-percent return."  (*Id.*).  Ahrens told Ricker that this investment opportunity also presented no risk because the funds which Ricker

---

[1]  Citations to the record are to the pages assigned by the electronic case management system.

3

invested would be secured by a note and a mortgage on real property. (*Id.*). "When gold hit its 'target number' the deal would be 'locked' and the funds would be paid to investors." (*Id.*). "Ahrens told Ricker, however, that he had to meet with him the next day or the deal might be lost." (*Id.*).

Ricker wired $400,000 from his bank account to the firm's account. (*Id.*, p. 4 ¶ 7). This money was transferred to an account owned by Alfred L. Madeira, who in turn transferred it to Sean Healy, who was supposed to make the investment. Ahrens prepared and provided Ricker with a note and a mortgage on property owned by Madeira. (*Id.*, pp. 4-5 ¶ 12). Because Ahrens had represented Ricker in the previous matter and on some estate matters, Ricker thought Ahrens was protecting Ricker's interests in the transaction. (*Id.*, p. 5 ¶ 12).

In February 2009, Ahrens told Ricker gold had "'hit its mark'" and to expect "an early pay-off on the investment." (*Id.*, p. 7 ¶ 20). In the same month, "Ahrens solicited Ricker to invest another $250,000 to buy more gold. Ricker refused to invest any additional funds, however, until he received the full return of his first investment." (*Id.*, p. 7 ¶ 21). "Despite repeated demands . . . Ricker has yet to receive the return of any of his $400,000." (*Id.* p. 8 ¶ 25).

In his state-court complaint, Ricker makes four claims: (1) a claim for professional liability against Ahrens; (2) a claim for professional liability against the firm; (3) a claim for negligent misrepresentation against Ahrens and the firm; and (4) a claim for breach of fiduciary duty against Ahrens and the firm. All claims are predicated on the allegation that Ahrens and the firm were providing legal services to Ricker in connection with the transaction.

C.  *The* Wagner *Action*

In their state-court complaint, the nine plaintiffs in the *Wagner* action make similar allegations.  As they allege in that section of their amended complaint, captioned "Facts Common to All Plaintiffs," they were already legal clients of Ahrens and the firm in some form and believed they were in an attorney-client relationship at the times Ahrens presented them with "an attractive moneymaking opportunity" with Madeira and Healy that would provide "an extraordinarily high rate of return with no risk."  (Doc. 28-4, pp. 7-8 ¶¶ 20-21, 26).

Based on Ahrens' representations, they provided certain substantial sums of money to Ahrens, which were eventually sent to Healy.  (Doc. 28-4, pp. 8-9 ¶ 29).  For at least one plaintiff, the solicitation was characterized as one for a "loan" to Madeira.  (Id., p. 11 ¶ 43).  The total amount of funds Plaintiffs in the underlying state action provided for the opportunity Ahrens presented was about $8.7 million.  (*Id.*, p. 9 ¶ 29).  However, Ahrens and the firm failed to disclose that they expected compensation from Madeira and Healy of about $8.7 million for legal services performed for those individuals.  (*Id.* p. 9 ¶ 31).  Plaintiffs have received "no funds" despite the representations concerning "the use of their funds, the expected repayment dates and the performances of the loans and investments."  (*Id.*, p. 9 ¶ 33).

The *Wagner* plaintiffs each make three claims against Ahrens and the firm: (1) a claim for professional negligence; (2) a claim for negligent misrepresentation; and (3) a claim for breach of fiduciary duty.

IV.  *Discussion*

In Pennsylvania, "an insurer's duty to defend and indemnify" its insured is "determined solely from the language of the complaint against the insured." *Kvaerner*

*Metals Div. v. Commercial Union Ins. Co.*, 589 Pa. 317, 331, 908 A.2d 888, 896 (2006). *See also Nationwide Mut. Ins. Co. v. CPB Int'l, Inc.*, 562 F.3d 591, 595-96 (3d Cir. 2009)(quoting *Kvaerner*). "[T]he duty to defend is separate and broader than the duty to indemnify . . . ." *Kvaerner*, 589 Pa. at 330 n.7, 908 A.2d at 896 n.7.[2] Thus, if there is no duty to defend, there is no duty to indemnify. *Id.* "In determining the existence of a duty to defend, the factual allegations of the underlying complaint against the insured are to be taken as true and liberally construed in favor of the insured." *Nationwide Mut. Ins. Co.*, *supra*, 562 F.3d at 595-96 (quoted case omitted).

To determine whether an insurer has a duty to defend, we engage in a two-step process. First, we look at the language of the policy "to determine in which instances [it] will provide coverage." *Kvaerner*, *supra*, 589 Pa. at 331, 908 A.2d at 896-97. Second, we examine the complaint in the underlying action "to determine whether the allegations set forth therein constitute the type of instances that will trigger coverage." *Id.*

Plaintiff MLM argues that it has no duty to defend or indemnify Ahrens or the firm in the underlying actions because they set forth claims that are excluded from coverage by exclusion 13 of the Policy. That clause excludes "any CLAIM arising out of the solicitation or sale of specific securities or specific investments by any INSURED." MLM maintains that both actions seek damages for Ahrens' conduct in soliciting investments.[3]

---

[2] "[T]he duty to defend arises whenever the complaint filed by the injured party may fall within the scope of the policy's coverage, [but] the duty to indemnify is more limited because it arises only if it is established that the insured's damages are actually covered by the terms of the policy." *Allstate Ins. Co. v. Drumheller*, 185 F. App'x 152, 154 n.2 (3d Cir. 2006)(nonprecedential).

[3] As noted, MLM argued other grounds for relief but this one is dispositive, so we need not discuss MLM's other arguments.

6

A. *The Ricker Action*

As to Ricker's pleading, MLM points to allegations in his second amended complaint characterizing Ahrens' conduct as soliciting Ricker's "investment" of the $400,000. (Doc. 28-3 ¶¶ 5, 6, 8 and 19). MLM highlights the allegation that "Ahrens solicited Ricker to invest another $250,000 to buy more gold. Ricker refused to invest any additional funds, however, until he received the full return of his first investment." (*Id.*, ¶ 21).

In opposing this argument, Ricker makes two contentions. First, he maintains that he "has never alleged that Mr. Ahrens solicited him to purchase **specific** securities or to make **specific** investments." (Doc. 36, Supp'n Br. at CM/ECF pp. 18-19)(emphasis in original). Instead, he alleged that Ahrens, "at most, acted as [a] lawyer . . . encouraging Mr. Ricker to loan money, generally, to Madeira for transmission to an alleged 'can't miss' investor in Florida." (*Id.* at p. 19). Ricker cites in support *Westport Ins. Corp. v. Bayer*, 284 F.3d 489 (3d Cir. 2002).

We reject this argument. *Bayer* is irrelevant because it deals with a coverage provision, not an exclusion. In that case, the insured lawyer had performed services for plaintiffs in an underlying action that were basically the same as those Ahrens had performed here.[4] The services led to transactions with companies run by Keith Fryer that lost money for those plaintiffs. In *Bayer* the insurer sought declaratory relief that it was not responsible under its terms of coverage for any judgment entered against the insured lawyer in the underlying negligent misrepresentation action. The Third Circuit held that there was coverage because the policy was ambiguous. *Id.* at 497. The policy covered claims "arising out of services rendered or which should have

---

[4] Or at least we can assume for the sake of argument that they are the same services.

been rendered . . . and arising out of the conduct of the insured's profession as a Lawyer." *Id.* The Third Circuit decided that reasonable persons could disagree on whether this language covered a lawyer's "actions in preparing installment notes, transferring money, and generally advising investment in Fryer's companies while holding himself out as an attorney who is watching over the [underlying plaintiffs'] investments." *Id.* The evidence showed the insured expected coverage for the services at issue. Since the coverage was ambiguous, it was construed in a manner consistent with the reasonable expectation of the insured. Ricker's reliance on *Bayer* is thus misplaced because it deals solely with coverage, not with the exclusion at hand.

Ricker's second argument is that his claim does not "aris[e] out of" solicitations to make specific investments as required by the exclusion but, rather, out of Ahrens' assurances that the note and mortgage would provide complete security. We reject this argument. In citing *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 557 Pa. 595, 612, 735 A.2d 100, 110 (1999), Ricker does correctly note that under Pennsylvania law the phrase "arising out of" means "but for" causation. *See also Essex Ins. Co. v. RMJC, Inc.*, 306 F. App'x 749, 752 (3d Cir. 2009) (nonprecedential)(under Pennsylvania law, "arising out of" is not an ambiguous term and means "but for" causation regardless of whether it appears in a coverage provision or an exclusion). However, he then erroneously shifts to using proximate causation in arguing that his claim does not arise out of any solicitation to make an investment. *See Essex Ins. Co., supra*, 306 F. App'x at 752 ("arising out of" is not interpreted in terms of proximate causation). If we interpret "arising out of" in the correct way, Ricker's claim did arise out of the solicitation (and sale for that matter) of the investment since "but for" the solicitation Ricker would not have a claim. Ricker's

contention that the claim really arose from the representation of complete security by way of the note and mortgage is one erroneously based on proximate cause.

Our conclusion is supported by *McCabe v. Old Republic Ins. Co.*, 425 Pa. 221, 228 A.2d 901 (1967), where a construction worker was killed when a trench collapsed. The worker's estate brought suit, and his employer was impleaded. The company requested a defense from its liability carrier. The policy excluded liability for injury or death of an employee "arising out of and in the course of his employment by the insured." *Id.* at 223, 228 A.2d at 903. The construction company argued that its employee's death did not arise out of the course of his employment, but rather arose out of the absence of shoring in the trench. In making the argument, it candidly relied on a proximate-cause interpretation of "arising out of." *Id.* The Pennsylvania Supreme Court disagreed, holding that the phrase "arising out of" did not mean "proximately caused by," and concluded that there was "an obvious causal connection between the [worker's] employment and his death." *Id.* at 224, 228 A.2d at 903. The court therefore found in favor of the insurer.

We conclude that the exclusion applies and bars coverage for Ricker's claim, as that claim arises out of the solicitation and sale of a specific investment, an investment in Healy's purchase of gold. As MLM points out, Ricker's pleading uses the language of the exclusion: "Ahrens solicited Ricker to invest another $250,000 to buy more gold. Ricker refused to invest any additional funds, however, until he received the full return of his first investment." (Doc. 28-3, Second Am. Compl. ¶ 21). "But for" the solicitation of the $400,000 the claim would not have arisen. We will

therefore grant MLM a declaratory judgment that it has no duty to defend or indemnify Ahrens or the firm in the *Ricker* action.[5]

    B.    *The* Wagner *Action*

The *Wagner* plaintiffs argue that the exclusion does not apply because they do not aver that Ahrens "solicited 'specific investments' from them" but that he "recommended that they make loans to Madeira." (Doc. 41, Supp'n Br. at p. 13).

We reject this argument. The pleading in the *Wagner* action does avoid the language of the exclusion by not alleging that there was solicitation of investments, and talking instead of the plaintiffs' "providing money," (doc. 28-4 ¶¶ 55 and 71) or being given a "business," "financial," or "moneymaking" "opportunity," (*id.* ¶¶ 38, 81, 90 102 and 125).[6] At one point, the solicitation is characterized as one for a "loan" to Madeira. (*Id.*, p. 11 ¶ 43). However, we cannot be bound by the plaintiffs' draftsmanship (and they cite no authority saying we are) if in substance their allegations describe activity falling within the exclusion. It is apparent that the allegations do. Regardless of whether the plaintiffs call it "providing funds" or making a "loan," they did expect to receive a return on the money they gave Ahrens. This makes their transactions an investment, as the latter word is commonly understood.

The *Wagner* plaintiffs also argue the exclusion does not apply because their "claims lie not necessarily in the solicitation of the loans but also in Ahrens' endorsement of them as Claimant Defendants' legal advisor on numerous prior similar matters." (Doc. 41, Supp'n Br. at p. 13). We reject this argument because it relies on

---

[5] Ricker argues in his reply brief that the exclusion does not apply because no "specific" investment was involved since the terms of the gold transaction were never discussed. (Doc. 40, p. 10). We reject this argument because the investment at issue is not the one Healy was supposed to have done but the investment made by Ricker.

[6] The plaintiffs do aver that Ahrens and the firm "solicited funds from Plaintiffs for 'loans' or for alleged 'investments' in gold futures . . . ." (Doc. 28-4 ¶ 4).

10

proximate causation. As noted above, the exclusion uses "but for" causation, and "but for" causation is satisfied here.

We will therefore grant MLM a declaratory judgment that it has no duty to defend or indemnify Ahrens or the firm in the *Wagner* action.

/s/William W. Caldwell
William W. Caldwell
United States District Judge

Date: May 18, 2010

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MINNESOTA LAWYERS MUTUAL :
INSURANCE COMPANY
    Plaintiff :

    vs. : CIVIL NO. 1:CV-09-1661

THOMAS J. AHRENS, Esquire, :
AHRENS LAW FIRM, P.C.,
DAVID E. RICKER, RANDALL WAGNER, :
JOHN JARBOE, LARRY L. HATTER,
JAMES J. GREEN, SR., :
KEITH HOSTLER, ANGELA HICKEY,
ORREL E. PICKLESIMER, Executor :
of the Estate of Edsel Picklesimer,
MARK RANDALL, NEIL BARR, :
    Defendants

*O R D E R*

AND NOW, this 18th day of May, 2010, it is ordered that:

1. The motions for judgment on the pleadings (doc. 35 and 38) are denied.

2. It is hereby declared that plaintiff, Minnesota Lawyers Mutual Insurance Company, has no duty to defend or indemnify Thomas J. Ahrens and Ahrens Law Firm in the action captioned as David E. Ricker v. Thomas J. Ahrens and Ahrens Law Firm, in the Court of Common Pleas of Cumberland County, Pennsylvania, docketed at No. 2009-3558.

3. It is hereby declared that plaintiff, Minnesota Lawyers Mutual Insurance Company, has no duty to defend or indemnify Thomas J. Ahrens and Ahrens Law Firm in the action captioned as Randall Wagner, et al. v. Thomas J. Ahrens and Ahrens Law Firm, in the Court of Common Pleas of Cumberland County, Pennsylvania, docketed at No. 2009-4586.

4. The Clerk of Court shall close this file.

                      /s/William W. Caldwell
                      William W. Caldwell
                      United States District Judge